629 P.2d 667

**Ben REEVES and Alberta Reeves, husband and wife, Plaintiffs-Respondents,**

v.

**Jimmy Joe WISENOR,
Defendant-Appellant.**

No. 13571.

Supreme Court of Idaho.

May 5, 1981.

Rehearing Denied June 23, 1981.

272

Daniel Mark Johnson of Strom, Longeteig & Johnson, Craigmont, for defendant-appellant.

Dennis L. Albers and Gregory FitzMaurice, Grangeville, for plaintiffs-respondents.

SHEPARD, Justice.

This is an appeal in which the sole issue is the denial of a motion to set aside a default judgment. We affirm.

On June 24, 1979, respondents Reeves filed a complaint against appellant Wisenor for breach of a lease and assault and battery. Wisenor contacted an attorney and thereafter attorneys for the parties conducted settlement negotiations. As of October 11 or 12, 1979, no answer to the complaint had been filed and the final contact between their attorneys was a telephone conversation of that date. The context of that telephone conversation between those attorneys is in dispute.

Reeves' attorney sent Wisenor and Wisenor's attorney a notice of intent to make application for default, and on October 30, a hearing was held thereon at which no appearance was made on behalf of Wisenor. An order of default was filed at 9:25 a. m. An answer on behalf of Wisenor was received and filed at 10:00 a. m. on the same day. On that same day, at 4:00 p. m., judgment was entered in favor of the Reeves. On November 7, 1979, Wisenor filed a motion to set aside the judgment on the grounds of mistake, inadvertence and excusable neglect as provided in I.R.C.P. 60(b). A hearing was held on that motion at which testimony was received and thereafter the motion was denied.

A default judgment may be set aside on the basis of mistake, inadvertence, surprise or excusable neglect. I.R.C.P. 55(c), 60(b). A motion to set aside a default judgment presents the trial court with a factual determination. *Hearst Corp. v. Keller*, 100 Idaho 10, 592 P.2d 66 (1979). Where, as here, mistake is alleged as grounds for relief, such must be factual rather than legal and must be conduct that might be expected of a reasonably prudent person under the same circumstances. *Hearst Corp. v. Keller, supra; Johnson v. Noland*, 78 Idaho 642, 308 P.2d 588 (1957); *Orange Transp. Co. v. Taylor*, 71 Idaho 275, 230 P.2d 689 (1951). The trial court here had before it the affidavits and the arguments of the attorneys and the testimony of Alberta Reeves taken at the hearing. We further note that the notice of intent to make application for default was mailed to Wisenor's attorney approximately one week after the telephone conversation which Wisenor's attorney argues was the basis for his mistake and inadvertence. The trial judge made a factual determination based on conflicting evidence, thereon exercising his judicial discretion, and that exercise of discretion will not be disturbed on appeal.

Further, we hold that in addition to meeting the requirements of I.R.C.P. 60(b), a party seeking to set aside a default judgment must show a meritorious defense going beyond the mere notice requirements which would be sufficient if plead before default. *Hearst Corp. v. Keller, supra; Thomas v. Stevens*, 78 Idaho 266, 300 P.2d 811 (1956). That policy is founded on the doctrine that it would be an idle exercise for a court to set aside a default if, in fact, there is no real justiciable controversy. *Hearst Corp. v. Keller, supra*. Here, there is no showing that such a meritorious defense existed.

The judgment and orders of the trial court are affirmed. Costs to respondents.

BAKES, C. J., and McFADDEN and DONALDSON, JJ., concur.

BISTLINE, Justice, dissenting.

The practicing attorneys of this state may well wonder at the trial court's refusal to set aside the default and default judgment, which bewilderment in that regard can only be exceeded in turn by the Court's refusal to reverse—a decision which is totally out of line with this Court's prior decisions, including some of which are very recent. The affidavit supporting the motion demonstrates circumstances not made entirely clear in the Court's opinion.

As I understand the ruling of the trial judge, he refused to set aside the default and judgment thereon solely because "in his discretion" the defendant, had "had ample time to actively defend . . . and did not do so," and because even after receiving plaintiffs' notice of intent to default, defendant made no timely filings prior to the entry of default. The trial judge therein evidences a blessed unawareness that an answer had been mailed for filing on the day before the default was entered, and that it was in fact filed 35 minutes after the entry, and was on file prior to the entry of judgment later that day after the ex parte trial of plaintiffs' claims for relief. Nor does the trial court show any regard for defense counsel's sworn statement of his understanding of counsels' conversation that Mr. Albers "would not pursue his Motion for Default on October 24, 1979 and that he would not pursue the matter in the immediate future . . . and that I would be notified again in advance of any hearing on a Motion for a Default Judgment . . . ." Nor did the trial court show any regard for the fact that the plaintiffs Reeves, after the entry of the judgment in their favor, filed a reply to Wisenor's counterclaim against them which was part of the answer.

It is an unusual case, and certainly a case which I would have thought would never have been decided as it was, both below and here. For the reason that it certainly sets the pattern of things to follow, I hope that my brief remarks may serve to temper the civil war which the upholding of this default judgment will surely precipitate down upon the bar, especially the younger and largely inexperienced members thereof.

*Hearst Corp. v. Keller*, 100 Idaho 10, 592 P.2d 66 (1979), in stating that a motion to set aside a default judgment initially presents questions of fact, taken in context, was correct in that so far as the opinion there was concerned with facts, the question was whether the defaulting defendant supplied any factual basis supporting his claim that he acted under mistake or excusable neglect in not proceeding sooner than he did. Defendant there stated only that he did not know of the strict time requirements for filing his answer and counterclaim. We held that such a mistake of law was no excuse, and that he showed no excusable neglect at all. In short, there was no factual determination to be made—other than that his statements of fact, totally uncontradicted, were insufficient.

In a more recent case the trial court was presented with conflicting factual issues on a motion to set aside a default judgment which, although the opinion does not reflect it, was coupled with a motion seeking injunctive relief against the sheriff to restrain him from processing the writ of execution which had issued pursuant to the judgment. In fact, the district court entered a temporary restraining order, and set the matter for hearing on an order to show cause, which was canceled after the hearing. *Credit Bureau, Inc. v. Harrison*, 101 Idaho 554, 617 P.2d 858 (1980). Therein there was a hotly disputed contest as to the validity of the affidavit of service of summons and complaint. The issue was submitted on oral testimony, and decided by written findings of fact and conclusions of law—which on appeal were upheld in this Court in accordance with the well known rule. This was a far cry from *Hearst*. Although *Hearst* was cited for the proposition that "[s]uch an application initially presents questions of fact to be determined by the trial court," *id.* at 556, 617 P.2d at 860,

there were no conflicting or contradictory factual issues in *Hearst*. And, I add, there were none here.

Our concern here is twofold: one, whether the trial court erred in not setting ·aside the default and default judgment, thus allowing the case to be decided on the merits—and not on a technical procedural rule which penalizes one party for what may be the fault of his attorney and casts an apparent windfall to the other party; and two, whether this Court should ignore the first question and reach its own determination. I address both questions.

Wisenor's motion was supported, as only it could be, his attorney's affidavit of November 6, 1979. Therein he explained how the default came to be taken. It is entirely clear therefrom[1] that (1) counsel had reached an understanding that defense counsel would not see his client defaulted, but that plaintiffs' counsel would send out a notice of default which would not be acted upon until defense counsel had an opportunity to contact his client and either file an answer or withdraw, and (2) that defense counsel was negligent or mistaken, or negligently mistaken in failing to comprehend that counsel had not reached such an understanding.

The only responsive paper filed by plaintiffs' counsel was that entitled reply to counterclaim, filed three days after defense counsel's affidavit. For reasons known only to himself, plaintiffs' counsel declined to execute an affidavit contradicting any of the statements made in the affidavit of defense counsel. Particularly, and that which should have concerned the trial court, and this Court as well, was defense counsel's statement that the arrangement recited in the affidavit was acceptable to plaintiffs' counsel who agreed to extend additional time beyond the 24th of October.

The integrity of defense counsel's statement of the understanding is wholly supported by the events which did transpire. Plaintiffs' counsel did send out a default notice, setting up the 24th as the day on which he would have the default entered. The 24th came and went, and no hearing

1. The affidavit of Wisenor's counsel reads as follows:

"I have been representing the Defendant, Jimmie Joe Wisenor, since July of 1979. That during the course of my representation I have on several occasions discussed the case with Dennis Albers, the attorney for the Plaintiffs'.

"On or about the 11th day of October, 1979, Dennis Albers called me again to discuss the case. He stated his clients were anxious to have the matter settled or to go forward with the lawsuit; therefore, he was going to send out a Notice of Intent to Make Application for Default and that a hearing would be set on the matter for October 24, 1979.

"I informed Mr. Albers that I would either file an Answer or Withdraw from the case as soon as I could discuss the matter further with my client. I further informed him that I could not be certain when the Answer or Notice of my Withdrawal would be filed and that I could not be certain that such would be filed before October 24, 1979, the date set for his Motion for Default. But I assured him that the matter would receive my immediate attention. I made certain that Mr. Albers understood that I would not allow a Default to be entered against my client so long as I was representing him. This arrangement was acceptable to Mr. Albers and he agreed to allow me this additional time necessary to ·

contact my client. Therefore, at the time of this conversation it was my distinct understanding that Mr. Albers would not pursue his Motion for Default on October 24, 1979 and that he would not pursue the matter in the immediate future. Further that he would allow me additional time in which to contact my client and then to file an Answer or to Withdraw from the case and that I would be notified again in advance of any hearing on a Motion for a Default Judgment against my client.

"As a consequence of this discussion, I drafted a letter to my client that day and the Default hearing set for October 24, 1979 was not conducted as agreed. I had no further contact with Mr. Albers regarding this case until November 2, 1979, when I received a copy of the Judgment entered on October 30, 1979 against my client, Jimmie Joe Wisenor. I did not receive any Notice of the hearing on the Motion for Default held on October 30, 1979 at 8:40 A.M.

"As the records of this case indicate, the Defendant, Jimmie Joe Wisenor, did file an Answer in this matter on October 30, 1979 at 10:00 A.M., approximately One hour and Twenty minutes after the entry of the Default but before the Judgment which was filed at 4:00 P.M. on October 30, 1979.

"Dated this 6th day of November, 1979."

took place—nor was plaintiffs' motion ever again noticed for hearing. Such is strong objective evidence, going wholly unrefuted by plaintiffs' counsel.

Plaintiffs' counsel, instead of providing his version of the conversation and his understanding, brought one of his clients, Mrs. Reeves, to the hearing, and had her testify. In this Court plaintiffs' counsel seeks to make much of her testimony, contending that such was contradictory of defense counsel's understanding and statement of what agreement was produced by the conversation of the two attorneys involved—a conversation which to her was what she made of what she heard one of the attorneys say. Mrs. Reeves established that she was in her attorney's office on October 11th to see how her lawsuit was progressing. Her direct testimony was:

"Q At that time do you recall that I placed a telephone call?

"A Yes.

"Q And did you overhear the things that I said on that phone call?

"A Yes.

"Q Now do you recall whether or not a particular date was set for further action on the part of the party I was talking with?

"A Yes, it was set to my . . .

"Q How exactly was that done? What did I say?

"A You told Mr. Johnson that you would go ahead and set it up and that it would be, I think, on the 24th. You counted off on your calendar and the time and the date and to my understanding that's the day it would be.

"Q Did I say, in your recollection, anything about extending the time past the 24th?

"A No.

"Q Do you have a specific recollection of that?

"A Yes.

"Q Do you recall how it was that twelve days were mentioned at that time and why twelve days were given?

"A Just to give them time to get things done."

On examination by defense counsel, however, she was asked these questions and gave these answers:

"Q Now the hearing was set for the 24th as far as you knew, right?

"A Uh, hum.

"Q *It didn't come off on the 24th did it?*

"A *No.*

"Q *Do you know why?*

"A *Just to allow more time I guess.*" (Emphasis added.)

Mrs. Reeves, whose testimony only covered five deposition-size pages, much of which was repetitious, had, then, from admittedly hearing only one end of a telephone call, an "understanding" that the 24th was set as the date "for further action on the part of the party I was talking with," but conceded that there was no hearing on that date "just to allow more time, I guess." Her negative testimony, like the well known whistle at the crossing not being heard, was that *from what she heard her attorney say,* nothing was said about extending defense counsel's time beyond the 24th. She admitted she did not hear what defense counsel said.[2]

In the first place, in deciding what, if any, consideration the trial court would properly give to such testimony, his order doesn't show that he gave it any, other than that he admitted it. The order, drafted by plaintiffs' counsel, and presumably drawn so as to favor the plaintiffs' interests where possible, does not state that testimony of Mrs. Reeves was considered. Nor do I see any reason why such would be, or should be.

---

2. Use of a witness who only heard one side of a telephone call is pitiful. If the witness heard her own attorney tell the person holding the phone on the other end of the line that a default notice would be sent noticed for hearing on the 24th, that witness would have no way of hearing the other party say, "Fine, that should do the trick, but please understand that I may need a new days beyond that to work things out with my client—after which you will have my answer or a notice of withdrawl. I don't want you to take a default while I am still representing the defendant."

In the second place, such testimony should not have been offered or received. Admittedly no objection was made, but nonetheless an experienced trial court would be expected to be little influenced by a lay person's understanding of what two attorneys agreed upon as to a procedural matter where all the lay witness has heard is one side of the conversation, and then testifies to a negative, as to what she didn't hear.

In the third place, the recollection of Mrs. Reeves was not contradictory to that which defense counsel stated in his affidavit. If plaintiffs' counsel wanted to contradict defense counsel, the better practice would have him to do it in a forthright manner—his own affidavit, and his own account of the critical conversation, and his own explanation as to why there was no hearing on October 24th, assuming his recollection differs from that of defense counsel that it was agreed that there would be no hearing at all, and no default unless and until defense counsel withdrew.

It is, of course, as plain as the proverbial nose on Dooley's face, as reflected in the trial court's order which gives no discussion of the content of defense counsel's affidavit, that the trial court also gave it no consideration, and hypertechnically upheld the default for the reason that defendant had ample time to "actively defend" against the complaint and did not do so. This would make sense, but provided only that one ignores that both parties had counsel, and counsel were quite actively attempting to settle the dispute without defendant being required to file an answer (and pay out a substantial sum for a filing fee) and without going to trial. Such is not just a justifiable but unusual experience, but is a general practice, and one to be encouraged, rather than discouraged.

The trial court's decision here is patently facile, and destructive of the good relationship which generally exists and should continue to exist between counsel. If this matter stood as defense counsel said that it did, with no response thereto, it appears to be a classical case of one attorney breaking the faith with another simply to appease a zealous client.

Plaintiffs' counsel in his brief filed in this Court makes this interesting statement: "Respondent [sic, appellant, Wisenor] offers no reason for the late filing of the answer and the disregarding of the Notice of Intent to Make Application for Default, other than his attorney's understanding of a conversation with plaintiff's attorney." That will indeed be remarkable to most attorneys who will readily see that the "attorney's understanding of a conversation with plaintiff's attorney" is what this controversy is all about. Moreover, plaintiffs' counsel, who offered no counter affidavit swearing to any different version of that conversation which led to what was agreed upon, does not even argue that defense counsel was prevaricating or embellishing. Instead, he *argues* that, assuming the truth thereof, it was a contested issue resolved against defense counsel, supposedly the trial court having pitted defense counsel's affidavit against Mrs. Reeves' testimony of what she heard, as already discussed. Seizing upon *Hearst*, the argument is advanced that credibility was a factual issue decided in plaintiff's favor, and, although the trial court did not pretend to have made such a factual determination, nor is there one in the record, it was an "implicit finding." *Hearst* is also relied on as a predicate for the proposition that a smattering of valueless testimony, hardly contradictory and largely supportive of the affidavit of defense counsel, from an unqualified witness as to what she overheard on but one end of a two-sided telephone conversation, is sufficient to preclude this Court from making an independent evaluation of the issue.

*Hearst*, properly read, teaches that where the trial court decision is made on a cold record, this Court may exercise its own discretion in passing on the matter. 100 Idaho at 11, 592 P.2d at 67. The Court does not always do so, however. The converse also is not necessarily so. That is to say, where the evidentiary record is partly live testimony and partly affidavit or deposition, an appellate court is not precluded

from making its own independent evaluation, and in Idaho this Court has done so. *Saccomano v. North Idaho Shingle Co.*, 73 Idaho 284, 287, 252 P.2d 518 (1952). In this particular case, however, there is no reason to dwell upon the applicability of the rule, simply for the reason that the testimony of Mrs. Reeves does not measure up to conflicting with, or offering any genuine contradiction to, that contained in the affidavit of defense counsel, but instead supports the latter. Factually missing is any affidavit from plaintiffs' counsel, in which regard it is to be presumed that could he have contradicted the affidavit of defense counsel, he would have done so—especially where the alternative was to resort to the extremely doubtful testimony of a witness who heard one side of a conversation in a realm to her unfamiliar.

In this regard note must be taken of that portion of the Reeves' brief wherein it is stated that the oral testimony of Mrs. Reeves "together with plaintiff's attorney's affidavit tended to conflict with the proof in support of the motion put forth in appellant's attorney's affidavit." Brief for Respondent at 11.

It is true that there is a plaintiffs' attorney's affidavit in the record, but it is equally true that it was filed *before* the filing of defendant's motion to vacate the default. The clerk's transcript which I look at shows the affidavit being both dated and filed on the 30th of October, whereas the motion to set aside default was filed by defense counsel on November 6th. As earlier pointed out, plaintiffs' attorney did *not* file a responsive affidavit. Moreover, the order of the trial judge clearly recites that only the "*supporting* affidavits [sic, affidavit] and admitted oral testimony" were considered.

The affidavit of plaintiffs' attorney was in the file solely for the obvious purpose of explaining to the trial judge just how the plaintiffs came to be requesting a default whereas a notice of default in the record disclosed that the defendant was being represented by counsel, and naming such counsel. That affidavit, if it was considered by the trial judge, and if it is properly considered here, strengthens the affidavit of defendant's attorney by establishing that it was at the solicitation of defense counsel that the sending out of notice of default was agreed upon, in order to move the reluctant defendant off of first base. His version of the telephone conversation in question was:

"That, at that time, your affiant personally telephoned attorney, Dan Johnson, Craigmont, Idaho, who had previously been representing Jimmie Joe Wisenor. At that time, your affiant stated to attorney, Dan Johnson, that something must be done in the form of either settlement or the filing of responsive pleadings. At that time, your affiant was told by Dan Johnson, that Jimmie Joe Wisenor was not cooperating, with Dan Johnson or his firm, and that we would have to do something formally. At that time, your affiant advised Dan Johnson that he would apply to the above-entitled Court for a default on the 24th day of October, 1979, and sent out a notice to that effect."

Although the affidavit states that application for entry of a default would be made on the 24th, as mentioned above, and although plaintiffs' counsel had ample opportunity to respond to the supporting affidavit on the motion to vacate, plaintiffs' counsel did not then explain, and has not to this day, why, if that was so, the application was not made. Of all of this, the Reeves' brief contends that although there may have been a mistaken understanding as to what was agreed upon, the trial court has found the mistake issue against defense counsel, and such is the end of it.

That, however, is not my understanding of the law. Accept for argument the fact that defense counsel and not plaintiffs' counsel was mistaken as to the final agreement reached over the telephone, the question remains—Was it any less a mistake? And if a mistake, should the innocent litigant be relieved of his attorney's mistake? Until today, I thought the answer not to be in doubt.

Had plaintiffs' attorney filed a responsive affidavit, and had it stated his version as to

278

the understanding of the telephone conversation, the most that could be said against defendant was that the mistake was not that of plaintiffs' counsel, but that of defendant's counsel. Just what would persuade the trial court to rely upon the recollection of one attorney as against another in this situation escapes me, especially where the application for default was not made on the date for which it was noticed up. Seemingly strange, some might think, that neither counsel showed up at the appointed time. At best the trial judge should have considered the matter at or near a standoff, wherein he would have been well guided by the fact that defendant moved swiftly on learning of the entry of default as in *Stoner v. Turner*, 73 Idaho 117, 247 P.2d 469 (1952), where a unanimous Court almost thirty years ago said in reversing: "Their affidavits are in direct contradiction as to what was said between them. If this leaves the matter in equipose as to the conversation, it still appears appellant acted promptly on discovering the default." *Id.* at 121, 247 P.2d at 471.

As recently as only two years ago in *Bunn v. Bunn*, 99 Idaho 710, 587 P.2d 1245 (1978), this Court relied extensively on the same case in reaffirming that which has been a well established judicial policy in this state:

"It has long been judicial policy in Idaho that controversies be determined and disposed of each on its own particular facts and as substantial justice may require. The exercise of judicial discretion should tend to bring about a judgment on the merits. *Perry v. Perkins*, 73 Idaho 4, 245 P.2d 405 (1952); *Dellwo v. Peterson*, 34 Idaho 697, 203 P. 472 (1921). *See* 5 Am.Jur.2d *Appeal and Error* § 906. The California District Court of Appeal, Second District, in *Brown v. Guy*, 167 Cal.App.2d 211, 334 P.2d 67, 69–70 (1959), said: 'There is, of course, a strong public policy in favor of hearing appeals on their merits and of not depriving a party of his right of appeal because of technical non-compliance where he is attempting to perfect his appeal in good faith.' *Accord, Lundy v. Lakin*, 89 Cal.App.2d 849, 202 P.2d 369 (Cal.1949).

"In addressing the effect of noncompliance with procedural statutes and rules, the Court in *Stoner v. Turner*, 73 Idaho 117, 121, 247 P.2d 469, 471 (1952), said:

The object of statutes and rules regulating procedure in the courts is to promote the administration of justice. Those statutes and rules which fix the time within which procedural rights are to be asserted are intended to expedite the disposition of causes to the end that justice will not be denied by inexcusable and unnecessary delay. But, except as to those which are mandatory or jurisdictional, procedural regulations should not be so applied as to defeat their primary purpose, that is, the disposition of causes upon their substantial merits without delay or prejudice.

Such philosophy again found expression in the Idaho Rules of Civil Procedure. Rule 1, as first promulgated, stated the following, which continues in the rule as now amended:

These rules govern the procedure in the district, probate and justices' courts in the state of Idaho in all actions and proceedings of a civil nature whether cognizable as cases at law or in equity, with the exceptions stated in particular rules and in rule 81. They shall be liberally construed to secure the just, speedy and inexpensive determination of every action and proceeding.

Rule 1, I.R.C.P.

"A 'determination' of an action within the meaning of Rule 1 is meant to be a *determination* of the controversy on the merits—not a *termination* on a procedural technicality which serves litigants not at all.... Judicial discretion, the exercise of which may result in an appeal's dismissal, must be a *sound* judicial discretion. Sound judicial discretion properly exercised will reflect the judicial policy of this State developed over many years by case law, and lying within the spirit of liberality mandated by Rule 1." *Bunn v. Bunn*, 99 Idaho at 711–12, 587 P.2d at 1246–47 (footnote omitted).

The Court, citing *Stoner v. Turner, supra,* and *Orange Transportation Company v.*

*Taylor,* 71 Idaho 275, 230 P.2d 689 (1951), made these pertinent statements in *Davis v. Rathbun,* 79 Idaho 482, 485, 321 P.2d 609, 610–11 (1958):

"In determining whether or not a motion to set aside a default should be granted, each case must be examined and considered in the light of the facts presented and the circumstances surrounding the case. In doubtful cases the general rule is to incline toward granting relief in order to bring about judgment on the merits.

"The purpose of Section 5–905, I. C., is to provide a means of relieving a litigant from the harsh consequences of a strict application of the time requirement. It should appear that a defaulting party seeking relief has not been guilty of indifference or unreasonable delay and that he has acted promptly and diligently in seeking relief, and that the other party is not unduly prejudiced or deprived of any advantage to which he may be properly entitled." (Citations omitted.)

In *Davis* the showing made in support of the motion to set aside the default was the defendant's contention that he understood no further action would be taken against him without further notice. Similarly, today we have counsel for Wisenor stating his understanding of the limited and special purpose of the default notice and stating his belief of an agreement that he would have an opportunity beyond the date specified therein to either answer or withdraw.

In *Davis* the Court reversed the refusal to set aside the default, noting that the defendant "believed in good faith that no further action would be taken in the case without notice to him. He did not delay when the default judgment was taken but acted promptly to have the same set aside." *Id.* at 486, 321 P.2d at 611.

Returning to the case before us, defendant's counsel filed an answer even before the judgment was entered, and immediately moved to set it aside. No one contends that he did not in good faith believe that he had time beyond the 24th in which to answer or withdraw, and as thoroughly emphasized herein, that there was no hearing on the 24th, or any explanation as to why not,

which fortifies the unattacked credibility of his affidavit. All that plaintiff contends is that any mistake as to what was agreed upon was that of defendant's counsel and not his own. Mistake, of course, is grounds for setting aside the default and default judgment. All that is required is a belief which is entertained in good faith, followed by prompt diligent action in seeking relief from the default.

The party taking the default, on the other hand, may attempt to show that prejudice will result to him if the default is set aside. Prejudice, or lack thereof, was also discussed in *Bunn v. Bunn, supra,* where it was pointedly observed by this Court that the trial court "did not address the question of any prejudice." 99 Idaho at 712, 587 P.2d at 1247.

Such is equally true of this case. That the trial judge gave no consideration to prejudice was probably occasioned by plaintiffs having never made such a contention. Nevertheless, it is a critical element for a trial court's consideration when asked to set aside a default. That the trial court went unmindful of that element is more understandable, however, than the same failure in the Court's opinion, which does not deign to do so either, notwithstanding that defendant's brief quotes extensively from *Davis v. Rathbun, supra,* relative to there being no showing whatever of any prejudice.

As urged in defendant's brief, there simply was not any prejudice, and none was claimed. Concede that plaintiffs were zealous clients who wanted action, and weren't satisfied with the ongoing negotiations of counsel. Add to that the taking of a default, and, ignoring the question of whether such action was appropriate, move directly to the effect of the default. Which was what? It produced an answer and the case was at issue, ready for trial. That is not prejudice, but is exactly what the plaintiffs wanted to achieve when they had their attorney call defendant's attorney.

The affidavit of defendant's attorney set forth sufficient reasons for setting aside the default. The only reasoning advanced for not doing so is that found in the order itself, to-wit, the statement that defendant

"has had ample time to actively defend plaintiffs' Complaint, and did not do so ...." It is difficult to make an intelligent appraisal of the import of this language, nothing like it appearing in any of the earlier cases. It appears as though plaintiffs' counsel, who drafted the order, was conceived of the notion that the situation paralleled that where a plaintiff is said not to have actively prosecuted, referred to in I.R.C.P. 41(b), failure to prosecute, or I.R.C.P. 40(c), failure to take any action within one year. At any rate, there appears to be no similar rule which applies to a defendant, and for certain such abstract statement has no application to a defendant who has retained counsel and whose counsel is "actively" attempting to avoid taking the court's time and effort by seeking out a settlement. It is difficult to understand just what an attorney might do in order to avoid the recrimination of not "actively defending" his client. Perhaps the blowing of a bugle in the direction of the enemy camp might suffice.

Our real and only concern here has to do with the circumstances surrounding the sending out of the notice of default. Certainly plaintiffs' counsel could at any time declare that negotiations were over, and could demand a pleading so that the case would be at issue. And, after three or four months of trying to work something out, plaintiffs' counsel would be entitled to something more than a notice of appearance, or a motion to dismiss. An answer would be preferred. Such is exactly what defendant's counsel promised (or a notice of withdrawal), and that is exactly what he provided.

It is clear that the two attorneys did agree that a notice of default would be sent. If one considers the affidavit of plaintiffs' counsel, it also becomes clear that it was defendant's counsel who asked for the notice of default: "At that time, your affiant was told by Dan Johnson, that Jimmie Joe Wisenor was not cooperating, with Dan Johnson or his firm, and *that we would have to do something formally.*" (Emphasis added.) It is equally clear that plaintiffs' attorney declined to contradict the sworn statements of defendant's attorney.

A brief comment needs also to be made relative to the final paragraph of the Court's opinion declaring that there is no showing of a meritorious defense—which it is said is required because of a policy "founded on the doctrine that it would be an idle exercise for a court to set aside a default if, in fact, there is no real justiciable controversy." *Hearst Corp. v. Keller, supra,* is cited for that policy statement. It is true that there is "no real justiciable controversy" language in *Hearst.* Such, however, has to be recognized as an inadvertence in choice of words. A showing of a "meritorious defense" is the true requirement. "Justiciable controversy" is ordinarily not used in the context as used in *Hearst,* and in the profession refers to a dispute between parties which is appropriate for judicial determination, as distinguished from dispute or difference of contingent, hypothetical or abstract character. *See* Black's Law Dictionary 777 (5th ed. 1979). Actually adverse parties are required, as is an actual controversy. *See generally* cases annotated to I.C. § 10–1201.

What the court has always insisted upon is that on a motion to set aside a default the defendant should tender either an affidavit of merits or an answer. In an affidavit of merits it has always been the practice for the affiant to state both his defense and his belief that his defense is meritorious. An answer should either admit or deny the allegations of the complaint, and an affirmative defense should be stated with enough particularity to at least indicate it may have some merit.

In *Hearst,* then, it is important to note that there was nothing in support of the motion made there which amounted to an affidavit of a meritorious defense, and no answer was tendered. Although the opinion fails to reflect it, the defendant in *Hearst* was sued on an open account, and the real gist of our holding there was this: "Defendant never denied owing the money plaintiff claimed." 100 Idaho at 12, 592 P.2d at 68. What was intended there, then, was to say only that where the defendant makes no claim that the money sued for is in fact not owing, *no defense* has been shown—hence the rule that there is no logic

in allowing a defendant back in court where it is a foregone conclusion that plaintiff will necessarily still prevail. Defendant's affidavit in *Hearst* was directed to an attempt to default upon a meritorious counterclaim, felt to be compulsory in nature.[3]

Such cannot be said of the case now under review. The defendant not only answered with proper denials and admissions in direct reference to the complaint, but did so even prior to the entry of judgment. Not only that, but the plaintiffs, making no challenge whatever to the sufficiency of the answer, filed a reply thereto. Moreover, the answer which in paragraphs I through III made the requisite denials and admissions in reference to the complaint, set forth in paragraphs IV through X specific detailed allegations as to the relationship of the parties, the problems leading to the altercation, and defendant's allegations as to the brawl and as to his having not intentionally struck the plaintiff, Mrs. Reeves.

Thus the complaint was not a notice pleading, but quite detailed, and the answer was equally so. These were indeed adverse parties with a genuine controversy involving many issues which could only be resolved by a trier of the facts following a trial on the merits.

Assuming, arguendo, bordering on the absurd, that the complaint and answer would have entitled the plaintiffs to a judgment on the pleadings as to defendant's liability, still there remained the issue of damages, in which regard it has always been thought to be the law that a defendant should have his day in court.

Here, however, a defendant, whose attorney may or may not have been the mistaken attorney, and whose attorney may or may not have been misled, enjoys the misfortune of having no day in court, and is assessed a substantial judgment which includes $2,000 punitive damages for committing a $512 battery found to have occurred when he "did with force and violence physically and intentionally injure Alberta Reeves."[4]

## SUMMARY

This case, in and of itself, is not a big case. But it is important. As I said at the outset of this effort, the opinion of the Court marks the end of one era, and the beginning of the other.

Henceforth when an attorney states under oath that he believed or understood that

---

**3.** In *Hearst* the district judge set aside the default primarily on the basis that the defendant's counterclaim would be lost if he were not allowed to respond, noting also defendant's promptness in moving.

**4.** The charge of the complaint was in part:
"That the defendant, Jimmie Joe Wisenor, was at the time of the injury hereafter set forth, a resident of Idaho County, Idaho, residing at White Bird therein; that the plaintiff, Alberta Reeves, is likewise a resident of White Bird, Idaho County, Idaho.

"That, prior to the date of the injury hereinafter set forth, plaintiff, Alberta Reeves, together with her husband, Ben Reeves, were engaged in operating the Arrowhead Bar, as a tenant of Jimmie Joe Wisenor, the defendant, and all parties were present on the 18th day of February, 1979, at the Arrowhead Bar premises.

"That, subsequent to a conversation between the defendant and the plaintiffs, within the Arrowhead Bar, at the time and place alleged in the previous paragraph, the defendant, Jimmie Joe Wisenor, without cause or provocation, made unlawful attacks upon the plaintiff, Alberta Reeves, striking the said

plaintiff, Alberta Reeves, on the head with great force and violence causing immediate injury and dizziness to said Alberta Reeves.

"That, the action on the part of the defendant was intentional, wilfull and unlawful. Thereafter, on the 21st day of February, 1979, Alberta Reeves sought medical attention through Donald J. Soltman, M.D., at Grangeville, Idaho, sustaining medical bills in the amount of $12.00.

"That the plaintiff during the entire month of February, 1979, sustained dizziness and headaches as a result of the unlawful striking by the defendant, and suffered general damages, physical pain and mental anguish and is damaged in the sum of $1,500.00.

"That in doing the things hereinabove alleged in this Count, the defendant acted maliciously, and was guilty of wanton disregard of the rights and feelings of the plaintiff, Alberta Reeves, and by reason thereof, plaintiff, Alberta Reeves demands exemplary and punitive damages against the defendant, Jimmie Joe Wisenor, in the sum of $3,000.00."
The response in defendant's answer was:
"The Defendant and Plaintiffs agreed that the Plaintiffs would purchase the Defendants

he had an agreement with counsel that a default notice would be sent in order to move a case off dead center, but that it was also agreed that no default would be taken, the court in its unbridled discretion is free to withhold relief, that is, unless the other attorney admits to having had the same understanding. It is an unenjoyable prospect and unfortunately evolves out of a case where neither the facts and circumstances nor long established law offer any support.

inventory on hand as of July 5, 1978. The inventory was counted and valued by the parties as TWENTY–FIVE HUNDRED DOLLARS ($2500.00), which was paid by the Plaintiffs to the Defendant.

"The Defendant was notified by the Plaintiffs on or about February 8, 1979, that the Plaintiffs wished to terminate the agreement by which they were operating the business, as of March 5, 1979.

"The Defendant felt that it would not be prudent business management to allow the Plaintiffs to continue to operate the business after they had notified him of their intention to terminate their agreement. This is because the Defendant felt the Plaintiffs would then be more likely to violate a law, rule or regulation of the State of Idaho regarding the sale of alcoholic beverages, which would then seriously jeopardize such beer and or liquor license held by the business.

"Therefore, on the 26th day of February, 1979, the Defendant entered the premises to discuss and effectuate a termination of the agreement prior to the 5th day of March.

"At this time heated words were exchanged between the Plaintiff, Ben Reeves and the Defendant, Jimmie Joe Wisenor, which resulted in blows being exchanged between these persons. It is the Defendants understanding that the Plaintiff, Alberta Reeves was also struck at this time, however the Defendant did not intentionally strike the Plaintiff, Alberta Reeves and would not do so. The Defendant suffered facial lascerations and injury as a result of the blows inflicted upon him by the Plaintiff, Ben Reeves."