695 P.2d 431

**W. John STIRM and Rosie Stirm, Husband and Wife, Plaintiffs-Respondents,**

v.

**Curtis PUCKETT, Defendant-Appellant.**

**No. 14998.**

Court of Appeals of Idaho.

Jan. 31, 1985.

Michael L. Schindele, Boise, for defendant-appellant.

G. Lance Salladay, Risch, Goss, Insinger & Salladay, Boise, for plaintiffs-respondents.

BURNETT, Judge.

We are asked to decide whether relief should be granted from a default judgment entered against a party of dubious mental competency. We hold that it should.

W. John Stirm and his wife Rosie sued their neighbor, Curtis Puckett, alleging that he had created a private nuisance, had slandered them, and intentionally had caused them emotional distress, by painting offensive words in public view. The words were written in large letters on two buildings and on a vehicle sitting on Puckett's property. The words consisted of an obscenity, of epithets directed toward the Stirms and of several phrases having no clear meaning. The paintings appeared while Puckett and the Stirms were embroiled in a zoning dispute and in acrimonious disagreements over other matters. In addition to seeking damages, the Stirms requested and received a preliminary injunction directing Puckett to refrain "from the further maintenance" of any such words on his property. Another derogatory phrase, this one mentioning the judge, briefly appeared on one of the buildings; but eventually Puckett—acting with help from his mother and on advice from an attorney—eliminated all of the painted words.

The Stirms continued to press their claim for a permanent injunction and for money damages. Puckett engaged two attorneys, each of whom entered an appearance but then withdrew without filing an answer in Puckett's behalf. Puckett submitted a handwritten notice, patterned after the written appearances filed by his former attorneys, stating that he would represent himself. On that day or on the day following, counsel for the Stirms filed and served by mail a notice of intent to take default. Puckett, who admittedly received the notice, did not respond. The Stirms obtained a default judgment for approximately $11,500 in compensatory and punitive damages, plus attorney fees and costs. The judgment recited that the Stirms had suffered "emotional distress and trauma" and that Puckett's conduct had been "wanton and malicious."

Puckett moved to set aside the judgment. In this endeavor he was represented by one of his former attorneys, who informed the court that he had withdrawn earlier because he "was having a heck of a time in communicating and dealing with Mr. Puckett." In support of his motion Puckett showed that he then was, and previously had been, receiving regular outpatient therapy from a psychologist. He also showed that at about the same time when the events here at issue occurred, he was examined by another psychologist to determine whether he could stand trial on an unrelated charge of malicious injury to property. The psychologist reported to the court that Puckett "lack[ed] the capacity to understand the proceedings against him and to assist in his own defense." The psychologist diagnosed Puckett as suffering from "paranoia," exhibiting a "chronic and stable persecutory delusional system." The psychologist noted that the mental illness would "impair [Puckett's] ability to relate to his attorney." Finally, the psychologist observed:

> If [Puckett] is to remain living alone without psychiatric care and treatment, it is most likely that he will not attain the capacity to defend himself in court. This particular mental illness is very resistive to change efforts. Thus, even with psychiatric care and treatment in the state hospital on an inpatient basis, the degree of expected improvement should be modest. Most likely he would improve suffi- cient [sic] to stand trial in 3 to 6 months.

The record now before us does not indicate that Puckett ever received "psychiatric care and treatment in the state hospital." Rather, as noted above, it shows only that he received regular outpatient treatment from a local psychologist.

At a hearing on the motion to set aside the default judgment, Puckett testified that he had not filed an answer because he was unable to obtain a copy of the Stirms' amended complaint from a former attorney or from a court clerk. He also said he thought he could give his answer orally in court to a jury. He based this belief upon a telephone conversation with the Stirms' attorney before the default was taken. In that conversation, which the attorney recorded on tape, Puckett contended that the painted words had not been slanderous and the attorney responded, "Well, we'll let the jury decide that."

The tape recording also reflects Puckett's thought processes. At one point Puckett said, "Let's see, why don't you fill out an order to dissolve your lawsuit and then everything will have to get up publicly and she's [Mrs. Stirm] gonna have to apologize for the stuff she's said about me." At another juncture in the conversation, Puckett remarked that no witnesses could be produced against him unless they had been bribed. He further stated that the judge should withdraw from the case because "he's associated with them." The Stirms' attorney told Puckett that if he was representing himself he would "have to follow the rules and procedures that guide lawsuits," but there was no discussion of filing a written answer with the court. Puckett said he would write the attorney "a letter" about the case. However, he expressed suspicion as to whether the attorney would forward a copy to the Stirms. No letter, as it turned out, was sent.

At the conclusion of the hearing on Puckett's motion, the district judge made the following observations:

Well, gentlemen, I think the Idaho Supreme Court lately has written an awful lot of law in this area, which I have read carefully as I went along.

And it seems to me the trend is to be that we have to establish mistake, inadvertence, excusable neglect, and also a defense. Now, I'm not saying that a defense hasn't been somewhat established, but I am saying that this defendant was advised by two attorneys, he was involved in the proceeding, even this tape shows what he was told he should do.

And the Idaho Supreme Court has made it very clear that this is not sufficient to set aside just because someone is confused and wants to take his own matters, but someday things have to be decided. And I do note that this was filed clear back in April [ten months prior to the hearing]. And as much as I can attune to Mr. Puckett's problem, many people have that with the courts, nonetheless, there is a certain procedure they have to follow or they don't stay in court.

And I am not going to set aside the motion. I don't think the provisions of 60(b) have been complied with....

The district judge subsequently entered an order denying Puckett's motion for the sole reason that Puckett's motion had been based upon a "mistaken belief that no written Answer was necessary, such mistake being a mistake of law and not one of fact...." This appeal followed.

We embark upon our review with a profound appreciation for the difficult task confronting a trial judge who is asked to set aside a default judgment. As case load pressures mount, Idaho judges are torn between a public demand that they dispose of cases expeditiously and a public expectation that they decide cases justly. When a litigant asks for his day in court, after suffering judgment against him for failure to file a proper pleading, he puts squarely in conflict the goals of efficiency and substantive justice. Rule 55(c), of the Idaho Rules of Civil Procedure, tips the scale in favor of justice, and authorizes the default judgment to be set aside, when grounds for relief have been established under Rule 60(b). Subsection (1) of Rule 60(b) provides relief, as the district judge in this case

noted, when failure to file a proper pleading is attributable to "mistake, inadvertence, surprise, or excusable neglect."

In our view, Puckett's motion to set aside the default urged two grounds for relief—mistake, comprised of his erroneous belief that he could answer the complaint orally, and excusable neglect, based upon a mental illness that impaired his capacity to work with counsel or to understand what the judicial system required of him. The district judge's decision focused narrowly upon the question of mistake. The judge's pronouncement, that a mistake must be one of fact rather than of law, is consistent with decisions of our Supreme Court. *See, e.g., Reeves v. Wisenor,* 102 Idaho 271, 629 P.2d 667 (1981); *Thomas v. Stevens,* 78 Idaho 266, 300 P.2d 811 (1956). But this, we think, is not the end of the case.

We turn to the question of "excusable neglect". Our research has not disclosed a precise definition of this term nor a satisfactory conceptual basis to segregate it entirely from a "mistake". Indeed, under some circumstances the failure to file a proper pleading may be treated both as a mistake and as excusable neglect. *E.g., A.F. Dormeyer Co. v. M.J. Sales & Distributing Co.,* 461 F.2d 40 (7th Cir. 1972). Conversely, where relief for a mistake has been denied because the mistake was one of law rather than of fact, our Supreme Court has taken care also to note that the circumstances did not show excusable neglect. *See Kingsbury v. Brown,* 60 Idaho 464, 473–74, 92 P.2d 1053, 1057 (1939) (applying statute similar to Rule 60(b)).

This overlap between mistake and excusable neglect necessarily implies the existence of cases where an act or omission might be treated as a mistake of law but also could be treated as excusable neglect. In the federal courts, for example, a default judgment has been set aside where a defendant failed to answer upon the erroneous assumption that a co-defendant's answer would suffice. *United States v. 96 Cases of Fireworks,* 244 F.Supp. 272 (D.C. W.D.Ohio 1965). Defendants have been relieved from default judgments when their written responses to complaints were sent to the plaintiffs but not to the courts. *Kinnear Corp. v. Crawford Door Sales Co.,* 49 F.R.D. 3 (D.C.S.C.1970); *Woods v. Severson,* 9 F.R.D. 84 (D.C.Neb.1948).

Mistake and excusable neglect also may overlap in cases involving litigants whose mental disabilities interfere with their capacity to understand and to comply with the requirements our judicial system places upon them. We refer here not to cases where the litigants are wholly incompetent. Judgments against such persons are void in some states and voidable in others. In either event, relief is available under Rule 60(b)(4) or 60(b)(6). *See, e.g., Southern Idaho Production Credit Ass'n v. Ruiz,* 105 Idaho 140, 666 P.2d 1151 (1983) (expressing view that judgments against incompetent persons are voidable). Rather, we refer to cases where litigants, while not utterly incompetent, are substantially impaired by mental illness.

The Montana Supreme Court encountered such a case in *Brothers v. Brothers,* 71 Mont. 378, 230 P. 60 (1924). There a defendant who had been adjudicated incompetent was sued after she had been treated at a state hospital, released and restored to legal capacity. She failed to answer, erroneously thinking that her appearance for a deposition would suffice. A default judgment was entered and she moved to set it aside. The evidence showed that she suffered a continuing mental illness but there was conflicting testimony on whether it had interfered with her ability to respond to the complaint against her. The Montana Supreme Court, relying upon a statute similar to our Rule 60(b)(1), noted that "the power to relieve parties from judgments obtained against them by reason of mistake, inadvertence, or excusable neglect ... should, in furtherance of justice, [be exercised in a] ... liberal spirit...." 230 P. at 61. The court further stated:

> [W]henever substantial doubt exists as to the mental competency of the party against whom a default is taken, it is always better to resolve the doubt in

favor of the application to set aside the default and dispose of cases of this character upon their merits, rather than to maintain too strict a regard for technical rules of procedure.

*Id.* The Supreme Court concluded that excusable neglect had been established. It reversed a lower court order refusing to set aside the default judgment.

Idaho shares Montana's concern for disposing of cases upon their merits. In *Orange Transportation Co. v. Taylor,* 71 Idaho 275, 280–81, 230 P.2d 689, 692–93 (1951), our Supreme Court said:

> What constitutes excusable neglect, or just how a reasonable [sic] prudent person should act under similar circumstances are comparative terms and the decisions as to when a default and a judgment may be set aside and answer permitted, may appear at times to be somewhat in conflict. . . . Each case must be examined in light of the facts presented, and the circumstances surrounding the same. * * * In doubtful cases, the general rule is to incline toward granting relief from the default and bring about a judgment on the merits.

The Supreme Court underscored this view in *Stoner v. Turner,* 73 Idaho 117, 121, 247 P.2d 469, 471 (1952), where it said:

> [E]xcept as to those which are mandatory or jurisdictional, procedural regulations should not be so applied as to defeat their primary purpose, that is, the disposition of causes upon their substantial merits without delay or prejudice. The purpose of Section R 5–905, I.C. [statutory predecessor of Rule 60(b) ], is to provide a means of relieving a litigant from the harsh and often unjust consequences of a strict application of the time requirement. To that end the court's discretion should be freely and liberally exercised.

Even in this day of burgeoning case loads, we have not compromised Idaho's commitment to deciding cases on their merits. In *Avondale on Hayden, Inc. v. Hall,* 104 Idaho 321, 326, 658 P.2d 992, 997 (Ct. App.1983), we stated:

> [A] motion to set aside a default judgment because of mistake, inadvertence, surprise or excusable neglect presents questions of fact to be determined by the district court. After the court has found the facts, it must decide whether these facts are sufficient, under proper legal standards, to warrant the relief sought. This application of law to the facts is tempered by a general policy in Idaho— that, in doubtful cases, relief should be granted to reach a judgment on the merits.

In *Avondale* we also enunciated a general standard for appellate review of a grant or denial of relief from a default judgment:

> [I]f (a) the trial court makes findings of fact which are not clearly erroneous, (b) the court applies to those facts the proper criteria under Rule 60(b)(1) (tempered by the policy favoring relief in doubtful cases), and (c) the trial court's decision follows logically from application of such criteria to the facts found, then the court will be deemed to have acted within its sound discretion. Its decision will not be overturned on appeal. *[Id.]*

However, in this case, as we have seen, the district judge entered no findings of fact and made no determination relating to excusable neglect or to Puckett's mental illness. Consequently, on this aspect of the case, we are not constrained by the deferential standard of review set forth in *Avondale.* In such circumstances, where the essential facts are not in dispute, "[w]e are at liberty to form our own impressions from the record and to exercise our own discretion in deciding whether the default judgment should have been set aside." *Johnson v. Pioneer Title Co. of Ada County,* 104 Idaho 727, 732, 662 P.2d 1171, 1176 (Ct.App.1983).

■ The record before us plainly shows the existence of mental illness. As noted above, Puckett has been diagnosed as suffering from paranoia demonstrated by a "chronic and stable persecutory delusional system." The disease is "very resistive to change efforts." Approximately when the events here at issue occurred, Puckett was

described as lacking the capacity to understand criminal proceedings against him and to assist in his own defense. At the time of the hearing on the instant motion to set aside the default judgment, he was receiving regular outpatient treatment for the mental illness. The conduct forming the basis of this suit, and Puckett's actions and statements during the suit itself, are consistent with the illness described. He does not, of course, appear to be wholly incompetent. He has exhibited some understanding of the lawsuit and of the need to respond to the complaint against him. His testimony at the hearing on his motion to set aside the judgment seemed rational. These undisputed facts, taken together, present a difficult task in measuring the impact of mental illness upon Puckett's failure to avoid a default. We believe, as did the Montana Supreme Court in *Brothers*, that where substantial doubt exists as to the mental capacity of the party against whom a default judgment has been taken, the better course is to set aside the judgment and to decide the case upon its merits.

■ Relief from the judgment has been timely requested under Rule 60(b). The Stirms have made no showing of prejudice in the event that Puckett is afforded his day in court. We conclude, in the exercise of our discretion, and in conformity with Idaho's policy of encouraging decisions on their merits, that a sufficient showing has been made to set aside the default judgment under Rule 60(b)(1). Our conclusion does not, of course, imply that all persons who have trouble with their attorneys or who suffer emotional disturbances are entitled to relief from judgments duly entered. Our Supreme Court has held to the contrary. *See Newbold v. Arvidson*, 105 Idaho 663, 672 P.2d 231 (1983); *Henney v. Henney*, 100 Idaho 739, 605 P.2d 503 (1979). Rather, our conclusion turns upon the unrefuted existence in this case of a professionally diagnosed mental illness for which the individual has been receiving regular outpatient treatment and which has been described, at a time reasonably proximate to this case, as so serious that it would have interfered with the individual's capacity to stand trial in a criminal prosecution.

■ When grounds for relief from a default judgment have been established, the final inquiry is whether a meritorious defense has been presented. The object of this inquiry is to prevent "an idle exercise [of setting] aside a default if there is in fact no real justiciable controversy." *Hearst Corp. v. Keller*, 100 Idaho 10, 12, 592 P.2d 66, 68 (1979). The factual basis of the defense must be set forth with particularity. *Id.*

■ Here, Puckett filed an affidavit in support of his motion, together with a contemporaneous memorandum of law by his reinstated attorney. In the affidavit, Puckett alleged that he suffered from the mental illness we have discussed; that he had painted over all offensive words when so instructed by his attorney; that Mrs. Stirm was not "as sensitive and easily upset" as she claimed, citing her participation as a party in other lawsuits; and that evidence considered by the judge when entering the default judgment failed to show that Mrs. Stirm had suffered psychological problems as asserted in her claim for damages. We believe this affidavit raises justiciable issues including, although perhaps not limited to, a mentally ill person's liability for punitive damages, such as were awarded in this case, and the actual extent of emotional distress caused by Puckett's conduct. We conclude that a meritorious defense, sufficient to warrant examining the case upon its merits, has been presented.

The order of the district court, denying Puckett's motion to set aside the default judgment, is reversed. The case is remanded with direction to vacate the judgment, insofar as it relates to the claim for money damages, and to grant leave for Puckett to file an answer. The court, in the exercise of sound discretion, may enter such ancillary orders as may be necessary to assure a prompt and fair determination of the Stirms' claim on the merits.

No costs or attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.