115 P.3d 726

**Keith D. JONSSON and Laurel F. Jonsson, husband and wife, Plaintiffs–Respondents,**

v.

**Bret OXBORROW, dba Elkhorn Ranch, Defendant–Appellant.**

No. 30473.

Supreme Court of Idaho, Boise, May 2005 Term.

June 15, 2005.

Service, Spinner & Gray, Pocatello, for appellant. Monte Gray argued.

Steven R. Fuller, Preston, for respondents.

EISMANN, Justice.

This is an appeal from the denial of a motion to set aside a default judgment on the ground of excusable neglect. We hold that the district court abused its discretion in refusing to set the default judgment aside and therefore reverse.

## I. FACTS AND PROCEDURAL HISTORY

On August 4, 2002, the plaintiff Keith Jonsson paid the defendant Bret Oxborrow the sum of $100,000. The parties dispute the purpose of the payment.

Jonsson contends that it was paid pursuant to a written agreement signed the same day granting Jonsson an option to purchase real property. The written agreement dated August 4, 2002, was between Jonsson and Elkhorn Ranch, Inc. It states that Jonsson has an option to purchase up to 50% of certain real property apparently known as "Elkhorn Ranch." The agreement did not include a legal description of the property or the name of the county in which it was situated, but it did state that the property was located in the state of Idaho. The agreement did not include any purchase price for the property, but provided that the price and terms would be noted in a future agreement. If Jonsson did not exercise the option, it would expire on September 6, 2002, and his money would be refunded within thirty days thereafter. Jonsson gave Oxborrow a check in the sum of $100,000 dated August 5, 2002, and payable to "Brett Oxborrow—Elkhorn Ranch."

Oxborrow contends that the written contract was merely a ruse to allow Jonsson to pay the $100,000 without his wife objecting. According to Oxborrow, he received notice of a large inheritance awaiting him in Nigeria, if he could pay for the necessary paperwork. He needed $100,000 to send to Nigeria in order to receive that inheritance. When he told his friend Jonsson of that golden opportunity, Jonsson agreed to invest $100,000 for a share of the inheritance. Oxborrow sent the money, but did not receive the promised inheritance. Oxborrow provided a copy of a bank record of Elkhorn Ranch, Inc., showing that on August 5, 2002, there was a deposit of $100,000 and a wire transfer of $97,000 to "Savanna Land Contractors." He states that he later wired an additional $34,500 of his own funds to the payee.

The Jonssons contacted an attorney seeking the return of their $100,000. The attorney sent a demand letter to Oxborrow on March 18, 2003. Oxborrow responded by telephoning the attorney and stating his version of the events—that Jonsson lost the $100,000 in a Nigerian scam. On March 20, 2003, the Jonssons' attorney sent another letter to Oxborrow restating the Jonssons version of the transaction and again demanding payment. After receiving no response, the Jonssons' attorney sent a third demand letter on March 25, 2003, to which Oxborrow again did not respond.

On August 15, 2003, the Jonssons filed this action seeking to recover the $100,000 from Oxborrow. The complaint named Oxborrow as the defendant but alleged a breach of the written contract between the Jonssons and Elkhorn Ranch, Inc. Oxborrow was served in Utah on August 28, 2003.

Eight days earlier, Oxborrow had retained Schneider, Flint & Associates, located in Fairfax, Virginia, to provide services in restructuring his business affairs. That company was not a law firm, but was engaged in assisting businesses and corporations that were in financial difficulty. On September 1, 2003, Oxborrow asked William Schneider to locate an Idaho attorney for him, and Schneider agreed to do so. Schneider left for vacation on September 8, 2003, apparently believing he would have enough time upon his return to obtain Idaho counsel. He became ill during the week of September 15, 2003, and was unable to perform his normal work tasks. He also stated that he could not go to his office in Fairfax, Virginia, on September 18 and 19, 2003, in order to locate Idaho counsel because it was closed on those dates due to Hurricane Isabel.

On September 15, 2003, someone from Schneider's office faxed a letter to Jonsson's counsel stating that Schneider, Flint & Associates had been retained in regard to the lawsuit; that it specializes in corporate turnarounds and business mitigation; that Elkhorn was in grave financial condition, with

bankruptcy a possibility; and that Schneider would be discussing the matter directly with Jonsson's attorney. Schneider did not do so. There was nothing in the letter indicating that Schneider, Flint & Associates were attorneys.

Oxborrow was required to answer the complaint by September 17, 2003. On that date, Oxborrow attempted unsuccessfully to contact Schneider and then contacted, but was unable to retain, an attorney in Pocatello, Idaho. The clerk of the court entered default against Oxborrow on September 19, 2003, and the judge signed the default judgment on September 23, 2003. On that same date, Schneider located an Idaho attorney to represent Oxborrow in this case. His counsel filed a notice of appearance on September 29, 2003, and a motion to set aside the default judgment on October 10, 2003.

The district court heard the motion and found that Oxborrow had failed to show excusable neglect. It therefore denied the motion to set aside the default judgment, and Oxborrow timely appealed.

## II. ANALYSIS

Rule 60(b)(1) of the Idaho Rules of Civil Procedure provides that a trial court may relieve a party from a final judgment on the ground of mistake, inadvertence, surprise, or excusable neglect. Because judgments by default are not favored, a trial court should grant relief in doubtful cases in order to decide the case on the merits. *Garren v. Saccomanno*, 86 Idaho 268, 385 P.2d 396 (1963). A trial court's denial of a motion to set aside a default judgment under Rule 60(b)(1) will not be set aside unless the trial court abused its discretion. *LeaseFirst v. Burns*, 131 Idaho 158, 953 P.2d 598 (1998). The findings of fact made by the trial court in deciding the motion will not be set aside unless they are clearly erroneous. *Id.* If the trial court applies those facts in a logical manner to the criteria set forth in Rule 60(b)(1), while keeping in mind the policy favoring relief in doubtful cases, the court will be deemed to have acted within its discretion. *Id.*

The conduct constituting excusable neglect must be that which would be expected of a reasonably prudent person under the same circumstances. *LeaseFirst v. Burns*, 131 Idaho 158, 953 P.2d 598 (1998). The district court gave five bases for finding that Oxborrow's conduct did not constitute excusable neglect.

First, it stated, "It wasn't until after the deadline for filing an answer that Mr. Oxborrow finally contacted an Idaho attorney." That finding is clearly erroneous. Rule 12(a) of the Idaho Rules of Civil Procedure required that Oxborrow serve an answer within twenty days after the service of the summons upon him. Under Rule 5(b), that service would be complete upon the mailing of the answer to the Jonssons' attorney. Because the summons was served on August 28, 2003, the answer would be served timely if it was mailed sometime on September 17, 2003. On that day, Oxborrow contacted an attorney in Pocatello, Idaho, although he was unable to retain that attorney. He did contact an Idaho attorney, however, before the expiration of the deadline for serving an answer.

Second, the court stated, "A reasonable a[nd] prudent person in these circumstances would have contacted an Idaho attorney upon first becoming aware of a potential lawsuit." This statement is incorrect. Both the Jonssons and Oxborrow resided in Lehi, Utah, and there is no allegation that their transaction, whatever it was, occurred in Idaho. Even though Oxborrow had received demand letters from an Idaho attorney, reasonable prudence would not have required that he obtain Idaho counsel before being served with the threatened lawsuit, particularly where it would likely have been filed in Utah, where both he and the Jonssons resided.

Third, the court stated, "Defendant's conduct was in-excusable [sic] as a reasonably prudent person would not have sat idly by allowing someone else to contact local counsel." A defendant does not exhibit indifference because he or she engages someone else to select an attorney to provide representation. As this Court stated in *Miller v. Brinkman*, 48 Idaho 232, 235, 281 P. 372, 373 (1929), "And a party is not required to personally engage an attorney to be 'otherwise

without default,' but may do so through another." Likewise, in *Consolidated Wagon & Machine Co. v. Housman*, 38 Idaho 343, 348–49, 221 P. 143, 144 (1923), this Court stated, "It might also be contended that Housman [the defendant] was not 'otherwise without default' in that he trusted Rubottom [a codefendant] to engage an attorney for him instead of doing it for himself. We conclude that this action was reasonable on his part, and did not constitute negligence."[1] There was no showing it was somehow unreasonable for Oxborrow to believe that Schneider could locate an Idaho attorney for him. In fact, Schneider is the one who located Oxborrow's current counsel.

Fourth, the court stated, "Further, the mistake is not factual but in law, and does not warrant the setting aside of the default judgment." Although there may be overlap between excusable neglect and mistake, the district court did not identify the alleged mistake of law. Oxborrow did not allege a mistake of law, and none is apparent in the record.

Finally, the court stated, "Mr. Oxborrow did not try to contact the company [Schneider, Flint & Associates] for approximately sixteen (16) days after he discussed the problem with them." Oxborrow did not simply discuss the problem with Schneider, Flint & Associates. He asked Schneider to locate an Idaho attorney, and Schneider agreed to do so. The district court's statement is correct insofar as it says that Oxborrow did not attempt to contact Schneider, Flint & Associates during the period from September 1, 2003, when Schneider agreed to locate an Idaho attorney to represent Oxborrow, until September 17, 2003, when Oxborrow unsuccessfully attempted to contact Schneider. Thus, the issue becomes whether Oxborrow's conduct in not attempting to contact Schneider for sixteen days constitutes inexcusable

neglect or, as this Court has sometimes phrased it, indifference.[2] We hold that it does not.

Oxborrow was served on Thursday, August 28, 2003, in Utah. The following Monday he asked Schneider to locate an Idaho attorney to represent him, and Schneider agreed to do so. There is nothing to indicate that a reasonably prudent person would not have trusted Schneider to perform that task timely. The fact that Oxborrow did not attempt to contact Schneider during the period from September 1 until September 17 does not show indifference on Oxborrow's part. The district court abused its discretion in holding that Oxborrow had failed to show excusable neglect.

A party seeking to set aside a default judgment must, in addition to showing mistake, inadvertence, surprise, or excusable neglect, also show a meritorious defense to the action which goes beyond the mere notice requirements that would be sufficient if pled before default. *Reeves v. Wisenor*, 102 Idaho 271, 629 P.2d 667 (1981). Having found that Oxborrow failed to establish excusable neglect, the district court did not address whether he had shown a meritorious defense. It is clear, however, that he has.

The complaint seeks to recover for breach of the written contract between the Jonssons and Elkhorn Ranch, Inc. The named defendant, however, is Oxborrow rather than Elkhorn Ranch, Inc. The complaint does not allege any facts stating a claim against Oxborrow. In his affidavit, Oxborrow recounted his version of the transaction and stated that he never agreed to be personally liable for the $100,000 paid by Jonsson. He also included a copy of a bank record showing that the $100,000 had been deposited into the bank account of Elkhorn Ranch, Inc., and a printout from the Utah Department of Com-

1. Both *Miller v. Brinkman* and *Consolidated Wagon & Machine Co. v. Housman* were decided under a former statute that permitted a court, in its discretion, to relieve a defendant from a default judgment taken through the defendant's excusable neglect. The phrase "otherwise without default" meant that the defendant was "guilty of no neglect himself." *Kivett v. Crouch*, 61 Idaho 536, 104 P.2d 21 (1940).

2. Under a former statute that permitted relief from a default judgment for excusable neglect, we equated "excusable neglect" as such conduct "as might be expected on the part of a reasonably prudent person" and stated that "the defaulting party [must not be] guilty of indifference or unreasonable delay." *Johnson v. Noland*, 78 Idaho 642, 644–45, 308 P.2d 588, 589–90 (1957).

merce web site showing that Elkhorn Ranch, Inc., was an active Utah corporation formed on November 14, 1997, and was in good standing. Oxborrow alleged facts showing a meritorious defense to the Jonssons' lawsuit.

### III. CONCLUSION

The order denying Oxborrow's motion to set aside the default judgment is reversed and this case is remanded for further proceedings.

Chief Justice SCHROEDER, and Justices TROUT, BURDICK and JONES concur.

