[No. 2585. Decided July 13, 1897.]

AURELIUS B. HULL, *Respondent*, v. RALPH T. VINING *et al., Defendants*, TRUMAN W. ENOS, *Appellant*.

VACATING JUDGMENT — EXCUSABLE NEGLECT — DISCRETION OF COURT.

Where a party to a mortgage foreclosure has been induced not to appear and interpose a meritorious defense by reason of the statement of the attorney for plaintiff that no personal judgment would be taken against him, and that he had been made a party defendant merely for the purpose of clearing the record, the party aggrieved may properly pursue his remedy under Code Proc., § 221, which affords relief from a judgment taken against a party through his mistake, inadvertence, surprise or excusable neglect.

While the matter of vacating a judgment in accordance with the provisions of Code Proc., § 221, is a matter within the sound discretion of the court, the refusal of the court to grant a motion seasonably made therefor is such an abuse of discretion as to warrant reversal, where it appears that the moving party has a meritorious defense against the rendition of a personal judgment against him in foreclosure proceedings, but that it had not been interposed by him owing to an agreement of the mortgagee's attorney not to take personal judgment; and when it further appears that, if the application is denied, the aggrieved party will

be forever barred from asserting or claiming any legal benefit of the facts constituting his defense.

Appeal from Superior Court, Pierce County.— Hon. JOHN C. STALLCUP, Judge. Reversed.

*Stiles & Stevens*, for appellant.
*Murry & Scott*, for respondent.

The opinion of the court was delivered by

GORDON, J.—The respondent brought suit in the superior court of Pierce county to foreclose a mortgage upon certain real property therein situated, given to secure a note executed by Ralph T. Vining and wife for the sum of $3,500 and interest. In the foreclosure suit the appellant, Truman W. Enos, was made a party defendant under the allegation that he had purchased the mortgaged property subsequent to the execution of the mortgage " for a good and valuable consideration, a part of which was the assumption of said mortgage, *which mortgage debt said defendant Truman W. Enos agreed to pay, and said agreement was incorporated in and made a part of the deed of purchase.*" On October 15, 1896, the default of appellant was entered and on the same day a decree of foreclosure and sale was also entered for the sum of $4,321.27, exclusive of costs. On November 16, 1896, the mortgaged premises were sold for the sum of $3,500, the respondent becoming the purchaser. On November 24, 1896, a deficiency judgment was entered against appellant for the sum of $858.96. About December 1, 1896, the appellant, upon notice, moved the lower court to vacate and set aside the default and judgment, and for leave to answer in the action. This motion was based upon files in the foreclosure suit and his own affidavit. In the affidavit it is stated that the summons and complaint was served upon him on August 7,

1896. Referring to that portion of the deed above set out alleging appellant's assumption of the mortgage debt, he states in the affidavit that he never assumed or agreed to pay the mortgage debt or any part thereof:

"And it was thereupon expressly understood and agreed between said Vining and this affiant that the deed from said Vining to this affiant should be a warranty deed, except that Vining would not warrant against plaintiff's said mortgage, and one other subsequent mortgage for the sum of $1,000, which sum was a lien upon said premises, but that the said deed should show by its terms that it was made subject to said two mortgages; and it was further expressly agreed between said Vining and this affiant, that this affiant would not assume, and that the deed of said Vining to this affiant should not contain any words whereby this affiant would appear to assume the payment of said mortgages, or either of them or any part thereof.

" That thereupon, and about August 29, 1892, said Vining caused to be prepared ready for signature and acknowledgment, a proper warranty deed for said premises, in accordance with the agreement theretofore made between said Vining and this affiant, and said Vining on said last mentioned day submitted said deed to this affiant for his approval, and thereupon this affiant approved the same, and agreed to accept it when executed and acknowledged by said Vining and his said wife, and returned it to said Vining for execution and acknowledgment.

" That thereupon said Vining and his said wife, on said 30th day of August, 1892, executed and acknowledged said deed and delivered said deed to this affiant, and affiant thereafter, and on the 8th day of September, 1892, caused the same to be recorded.

" That after the time when said Vining took said deed for the purpose of executing and acknowledging it after having exhibited it to this affiant for his approval, and before the time when said Vining delivered said deed to this affiant, said Vining, without the knowledge or assent of this affiant, and in violation of the terms of the agreement for the sale of said premises then existing between

himself and this affiant, and surreptitiously, and for the purpose of defrauding this affiant, caused the words ' which said mortgage the grantee herein assumes and agrees to pay ' to be written and interlined in said deed, next after the words ' and due Oct. 19, 1892,' and said Vining caused said words to be so skillfully written and interlined in said deed that this affiant, who believed that said Vining would execute and deliver said deed to him in the form proposed to and approved by him, as aforesaid, was deceived and misled, and did not read over the body of said deed when the same was delivered to him, and received and accepted said deed, supposing and believing that it was the deed proposed to him for his approval and in the same form and none other.

"That this affiant did not discover the fact that said words had been written and interlined in said deed until about the 6th day of April, 1895, when the said Vining and wife had removed from the state of Washington, and become residents of the state of California, where they now reside.

"That this affiant would not have accepted said deed from said Vining, and would not have become the purchaser of said premises at all, had he known that said deed contained said written in and interlined words, and had he not relied upon said Vining and believed that he would execute and deliver said deed in the form approved by this affiant as hereinbefore stated."

In connection with the application to vacate and set aside the default and judgment, appellant tendered and exhibited an answer to the complaint of foreclosure embracing substantially the matter set forth in the affidavit. In his affidavit appellant states as a reason why he had not interposed the defense timely, that he had had frequent conversations with one of the attorneys for the respondent, in which conversations he had informed said attorney " of all the facts and circumstances connected with affiant's purchase of said mortgaged premises," and that by reason of such facts he was not bound to pay the mort-

gage debt, and also that he would not pay the same "and would defend any action which plaintiff might bring against him on said alleged assumption by him of said debt." That thereupon he requested the attorney not to make him a party to the foreclosure suit, but that just before commencing the action the attorney stated to him that it would be necessary "in order to clear the record title of said mortgaged premises, that affiant be made a party to said action, but that although he would be made such party, he would be protected against personal liability therein." That it was thereupon agreed between them that the affiant should not appear in the action or file any answer therein, and that no judgment for any deficiency should be taken against him; that he relied upon said agreement made by said attorney, and did not, solely for that reason, appear in said action or file any answer or in any manner defend the same; that but for such statement and agreement of said attorney, he should have appeared in said action and would have defended the same and would have filed his answer therein in substance the same as the proposed answer which he presented to the court in connection with the application.

In opposition to appellant's affidavit respondent produced the affidavit of his attorney, in which the attorney stated that "he never had any conversation with the defendant Enos relative to how the said Enos came to assume and agree to pay said mortgage debt nor how the assumption clause came to be made a part of the deed of purchase from the said defendants, Vinings, to the said Enos, nor anything concerning said transaction." And further, "that the conversation had by him with the defendant Enos relating to said mortgage debt was in regard to the payment of the interest due thereon and the payment of city and county taxes for the years 1892, 1893, 1894 and 1895,

which the said Enos allowed to become delinquent." That after several promises on the part of said Enos to pay said taxes and interest, he "finally absolutely refused to do so, but said that he would like to correspond direct with the mortgagee relative to a settlement of the whole matter without a suit," and asked affiant to delay foreclosure proceedings until he could so write the mortgagee, who is now the plaintiff in this action; also that he never at any time had agreed not to take a personal judgment against the defendant Enos, nor was there any agreement or understanding of any kind whatsoever relative to affiant's so doing or relative to appellant's not appearing in said action or filing any answer therein, and that there was nothing whatsoever said in relation thereto. The court having denied appellant's motion to vacate the judgment, he has appealed from such order and from the deficiency judgment. Respondent urges that appellant has mistaken his remedy and that the procedure to vacate the judgment should have been by petition agreeably to title 14 of vol. II, Hill's Code, and not by motion and affidavit under § 221. He insists that the ground upon which the present application is urged is "fraud practiced by the successful party in obtaining the judgment," and not the "mistake, inadvertence, surprise or excusable neglect," of the moving party. It appears that a similar objection was interposed in the lower court, but the record does not disclose that it was specifically ruled upon, and we are unable to say whether the application to vacate was denied upon the supposition that it was without jurisdiction or because the court was not satisfied with the showing upon the merits. But, in any event, it is respondent's right to be heard upon the objection in this court. It might often be difficult to say whether upon a given showing the case was one of "fraud practiced by the successful party" or whether the judgment was the result

of the "excusable neglect" of the defendant. Consider-
ing the nature of the relief sought and the object to be
attained, the court ought not to indulge in any refined dis-
tinctions which might in many cases amount to a denial
of justice, and, indeed, we think that not infrequently
either method of procedure would be permissible. In the
present case, however, we think it not unfair to suppose
that without any intention to mislead, deceive or practice
fraud upon the appellant, the learned counsel for the re-
spondent may, in his conversations with appellant—and it
appears there were several of them—have led the appellant
to suppose that no personal judgment would be taken
against him in the action. We are not disposed to think
that it was a part of the purpose of learned counsel to
mislead appellant, and yet we are convinced that such was
the effect. We more readily incline to that view from the
fact that the application to vacate discloses a meritorious
defense and was seasonably made. It followed as soon as
it was ascertained that the mortgaged property had sold
for an amount insufficient to pay the debt. We are unable
to discover, from the circumstances of the case, how appel-
lant could have expected to gain any advantage by allow-
ing a judgment to be entered against him before coming
forward with his defense. On the contrary, his whole
course comports with the theory that he did not anticipate
the entry of a judgment. In this view, the case is clearly
not one where judgment has been entered as a result of
" fraud practiced by the successful party," but rather where
it has resulted from the " excusable neglect " of the mov-
ing party and the record presents a proper case for relief
under § 221, *supra*. *Woodward v. Backus*, 20 Cal. 138;
*Huart v. Goyeneche*, 56 Cal. 429.

Respondent's counsel further urges that upon the mer-
its, the application was addressed to the sound discretion

of the trial court. This must be conceded, but the discretion to be exercised in such cases is a legal, and not an arbitrary, discretion. The supreme court of California, speaking through Mr. Justice SANDERSON, in *Bailey v. Taaffe*, 29 Cal. 424, well said:

"The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia*, but a legal discretion, to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice. In a plain case, this discretion has no office to perform, and its exercise is limited to doubtful cases, where an impartial mind hesitates."

In the present case, if the facts alleged in the answer exhibited at the hearing of this application are true, they constitute, in our judgment, a valid, legal defense to any personal claim of the mortgagee against the appellant. It is also true, that unless an opportunity is afforded the appellant to assert it in the foreclosure proceedings, the defense is lost to him forever. If it were a mere matter of counterclaim, where the facts authorized an independent cause of action or entitled the party to some other adequate remedy, we should hesitate before granting an application of this character. But here it is apparent that, if his application is denied, appellant will be forever barred from asserting or claiming any legal benefit of the facts alleged in the answer to exist. And in this connection we note that the right to a personal judgment against appellant is not because of any contract entered into between himself and the mortgagee, nor is it based upon any consideration moving from the mortgagee to the appellant. While this does not afford a legal objection to respondent's claim for a personal judgment based upon the assumption clause

of the deed to appellant, it is, however, a circumstance which we think may rightly be considered in disposing of an application which in its nature is addressed to the equitable consideration of the court. The rule in cases of this character seems to be, and of right ought to be, that " where there is a showing, *not manifestly insufficient,* the court should be liberal in the exercise of its discretion in furtherance of justice." Hayne, New Trial and Appeal, § 347, and cases there cited.

In the present case it seems clear from the record that the appellant has a meritorious defense to the claim for personal judgment against him. It is also certain that his application to open the default was seasonably made, and that the granting of it will work no grievous hardship to the respondent. We think, therefore, that the duty of the lower court was plain, and that the application should have been granted.

To the end that justice may be done the order and judgment appealed from will be reversed and the cause remanded with direction to the lower court to permit the answer of appellant to be filed.

SCOTT, C. J., and REAVIS, ANDERS and DUNBAR, JJ., concur.