[No. 77560-5.   En Banc.]
Argued May 23, 2006.     Decided June 21, 2007.

LISA LITTLE, *Respondent*, v. ANNIE KING ET AL., *Petitioners*.

*Francis S. Floyd* and *Amber L. Pearce* (of *Floyd & Pflueger, PS*); *William R. Hickman* (of *Reed McClure*); and *Katina C. Thornock* (of *Cozen O'Connor*), for petitioners.

*Stanley J. Rumbaugh* and *Terry J. Barnett* (of *Rumbaugh Rideout Barnett & Adkins*), for respondent.

*Bryan P. Harnetiaux* on behalf of Washington State Trial Lawyers Association Foundation, amicus curiae.

¶1 CHAMBERS, J. — A driver whose vehicle collided with another and an underinsured motorist insurer moved to vacate a default judgment. The driver, who had not filed an answer, came to the default judgment hearing but decided not to contest entry of judgment. The insurer, who was given notice of the litigation, chose not to intervene. We conclude that these moving parties have failed to make the required showing to set aside the judgment. We also conclude that because the insurer failed to intervene, it was not a party and was not entitled to notice of the hearing.

¶2 The driver and the insurer also complain that the trial judge did not enter formal findings of fact and conclusions of law. Findings of fact and conclusions of law are both desirable and required by CR 55(b)(2). When the findings and conclusions are missing or are defective, the proper remedy is remand for entry of adequate ones unless the appellate court is persuaded that sufficient basis for review is present in the record. In this case, we find the record is adequate for our review. We affirm the Court of Appeals and remand for reinstatement of judgment.

## FACTS

¶3 On March 16, 1999, Annie King rear-ended Lisa Little's automobile twice. The first time, both King and Little were in the far left lane on a freeway. The second time, they were merging back into traffic after exchanging insurance information. The record suggests that King was 16 or 17 years old at the time of the accidents.

¶4 At the time of the accidents, Little was driving on work-related business. Since 1984, Little had worked as an outside sales representative at Jim Little Staple Supply, Inc. Little immediately felt some neck and lower back pain but continued on because she had work to do and she thought the pain would pass.

¶5 The next day, Little consulted a chiropractor for back and neck spasms and was eventually referred to a neurosurgeon. Three months after the accidents, Little had

a magnetic resonance image (MRI) done of the neck region of her cervical spine, which indicated to her doctor that surgery was needed. Five months after the accidents, Little had the first of two neck surgeries: "an anterior cervical discectomy and fusion" at the C5-6 level, using bone grafting and a metal plate to accomplish the fusion. Clerk's Papers (CP) at 60. After this first surgery, Little experienced some improvement in her neck-related symptoms, primarily elimination of radicular pain in her arms. However, Little's back and other neck pain remained. Little was referred to a pain management specialist and continued with treatment to her neck and back. This treatment included three selective transforaminal injections into her spine, pain medicine, and physical therapy. She also received further diagnostic testing, including a discogram and additional MRI studies. After the two accidents, Little initially returned to work on a reduced schedule, working 4-5 hours a day. Little reported that her last day of work was August 8, 2000, due to her medical condition.

¶6 In November 2001, Little had microdecompressive back surgery at three lumbar levels. According to her doctors, the neck region of Little's cervical spine continued to deteriorate, as did her lumbar spine. Little's treating doctors declared that it was more probable than not that the two accidents in March 1999 caused "spinal problems [that] are serious, and will permanently reduce her physical capacities, both work-related and in her recreational and family life." CP at 116.

¶7 The parties learned that the coverage on King's car had lapsed and thus she was an uninsured motorist at the time of the accident. Little was driving in the scope of her employment at the time, and her employer had uninsured motorist (UIM) coverage from The St. Paul Insurance Company. Little's counsel was in communication with St. Paul both before and after formally bringing suit against King. This communication included a letter to St. Paul's adjuster outlining Little's medical condition and treatment, alerting the adjuster that Little was likely to be permanently disabled, and informing St. Paul that her past and

future out-of-pocket expenses and wage loss alone could exceed $1 million. On May 22, 2002, Little's counsel mailed St. Paul a copy of the summons and complaint, the order setting case schedule, and the notice of deposition of Ms. King. St. Paul would have been permitted to intervene in the case if it had moved to do so because it was at risk of liability by virtue of its UIM obligations. *See Lenzi v. Redland Ins. Co.*, 140 Wn.2d 267, 280, 996 P.2d 603 (2000); *Fisher v. Allstate Ins. Co.*, 136 Wn.2d 240, 245-46, 961 P.2d 350 (1998). St. Paul took no action to intervene.

¶8 Although youthful and uninsured, King did respond to the summons and complaint. While King did not file an answer, she did appear for her deposition. Despite receiving notice, St. Paul did not send a representative. On November 5, 2002, at St. Paul's request, Little's attorney sent St. Paul a copy of the transcript of the deposition, attached to a cover letter explaining that Little "continues to experience difficulties with her lumbar spine in particular." CP at 413. Little's attorney also enclosed Little's most recent MRI study indicating "progressive disc protrusion at L4-5 with right neural foramen narrowing, these findings having an adverse effect on the right L-4 nerve root." *Id.* Additional surgeries were performed.

¶9 Thirteen months after filing the complaint and eleven months after serving King and sending copies of the pleadings to St. Paul, Little moved for an order of default and default judgment (or, alternatively, for summary judgment) against King. Little filed a declaration of mailing, indicating that King was sent all documents related to the motions. Little continued to require medical attention during this time.

¶10 On May 23, 2003, a hearing was held on Little's motions. Little appeared at the hearing through her attorney of record and King was present, without an attorney. Little submitted numerous documents relating to her medical condition, her medical expenses, and her future prognosis, including declarations from her two surgeons and her clinical psychologist, the postoperative reports, the MRI

reports, her disability certifications, the medical consultation notes, medical bills she had submitted to the Department of Labor and Industries, and a copy of King's deposition.

¶11 At the hearing, Judge Laura Gene Middaugh gave King an opportunity to file an answer and explained that if she did, default judgment would be denied. Judge Middaugh then adjourned the proceedings to give King the opportunity to draft and file an answer. When the court reconvened, King declined the judge's invitation, explaining she had no real dispute with the factual allegations in the complaint, though she disputed the amount of damages as unreasonable.

¶12 Judge Middaugh did not immediately enter judgment because she was concerned about calculating damages based on the record before her, and she requested counsel supplement the record. After that information was received, the judge entered a default judgment in favor of Little for $2,155,835.58, consisting of $249,234.48 for past economic damages, $1,256,601.10 for future economic damages, and $650,000 for general damages. CP at 306. However, the trial court did not prepare findings of fact or conclusions of law. A few weeks later, Little's attorney sent St. Paul a certified copy of the default judgment and a request for $2 million in uninsured motorist coverage payments.

¶13 About two weeks after that, St. Paul moved to intervene and vacate the default judgment. Subsequently, King, now represented by counsel, joined in St. Paul's motion. A different judge granted King and St. Paul's motions. Little appealed. The Court of Appeals reversed and we granted review. *Little v. King*, 156 Wn.2d 1020, 132 P.3d 735 (2006).

## STANDARD OF REVIEW

¶14 We review a trial court's decision on a motion to set aside a default judgment for abuse of discretion. *Yeck v. Dep't of Labor & Indus.*, 27 Wn.2d 92, 95, 176 P.2d 359

(1947). Among other things, discretion is abused when it is based on untenable grounds, such as a misunderstanding of law. *Braam v. State*, 150 Wn.2d 689, 706, 81 P.3d 851 (2003).

## ANALYSIS

¶15 First, we note that St. Paul, unlike King, had not appeared in the action prior to the default judgment hearing. Since St. Paul had not appeared, it was not entitled to notice of this hearing. *Dlouhy v. Dlouhy*, 55 Wn.2d 718, 721, 349 P.2d 1073 (1960).[1]

¶16 We now turn to whether the trial court abused its discretion in vacating the default judgment under CR 60(b)(1).[2] As a general matter, default judgments are not favored because " '[i]t is the policy of the law that controversies be determined on the merits rather than by default.' " *Griggs v. Averback Realty, Inc.*, 92 Wn.2d 576, 581, 599 P.2d 1289 (1979) (alteration in original) (quoting *Dlouhy*, 55 Wn.2d at 721). But we also value an organized, responsive, and responsible judicial system where litigants acknowledge the jurisdiction of the court to decide their cases and comply with court rules. *See Griggs*, 92 Wn.2d at 581. The fundamental principle when balancing these competing policies is " 'whether or not justice is being done.' " *Id.* at 582 (quoting *Widicus v. Sw. Elec. Coop., Inc.*, 26 Ill. App. 2d 102, 109, 167 N.E.2d 799 (1960)). This system is flexible because " '[w]hat is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome.' " *Griggs*, 92 Wn.2d at 582 (quoting *Widicus*, 26 Ill. App. 2d at 109).

¶17 A party moving to vacate a default judgment must be prepared to show (1) that there is substantial

---

[1] We decline to consider St. Paul's argument that it had informally appeared as not timely raised. *See* RAP 2.5(a).

[2] CR 60(b)(1) provides in relevant part that "[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment . . . for the following reasons: (1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment."

evidence supporting a prima facie defense; (2) that the failure to timely appear and answer was due to mistake, inadvertence, surprise, or excusable neglect; (3) that the defendant acted with due diligence after notice of the default judgment; and (4) that the plaintiff will not suffer a substantial hardship if the default judgment is vacated. *White v. Holm*, 73 Wn.2d 348, 352, 438 P.2d 581 (1968) (citing *Hull v. Vining*, 17 Wash. 352, 49 P. 537 (1897)). This is not a mechanical test; whether or not a default judgment should be set aside is a matter of equity. *White,* 73 Wn.2d at 351. Factors (1) and (2) are primary; factors (3) and (4) are secondary. *Id.* at 352-53.

¶18 The central issue in this case is whether King and St. Paul have presented substantial evidence of a prima facie defense. Neither King nor St. Paul argues a defense to *liability.* No one disputes that Little was injured in two rear-end collisions caused by King in quick succession. Instead, King and St. Paul essentially argue that the damages awarded were unreasonable and that preexisting conditions may have contributed to Little's injury. Except in unusual circumstances, a party who moves to set aside a judgment based upon damages must present evidence of a prima facie defense to those damages. *See* CR 60(e)(1); *White,* 73 Wn.2d at 352. The amount of damages in a default judgment must be supported by substantial evidence. *See, e.g., Shepard Ambulance, Inc. v. Helsell, Fetterman, Martin, Todd & Hokanson,* 95 Wn. App. 231, 240-42, 974 P.2d 1275 (1999). It is not a prima facie defense to damages that a defendant is surprised by the amount or that the damages might have been less in a contested hearing. *Shepard,* 95 Wn. App. at 242.

¶19 The defendants provided *no* competent evidence of a prima facie defense to damages. The only thing offered was a declaration from an insurance adjuster stating that the adjuster had reviewed Little's medical records and found reports of headaches, hip pain, and depression before the collisions. But the moving parties have simply not presented any evidence that would tend to show that Little's

preaccident aches, pains, and depression were related in any way to her postaccident condition. Even viewed in the light most favorable to the parties moving to set aside the default judgment, mere speculation is not substantial evidence of a defense. *See White*, 73 Wn.2d at 352.

¶20 We have long held that the mere existence of a preexisting condition is an insufficient basis to infer a causal relationship between the injury complained of and the preexisting condition. *Vaughan v. Bartell Drug Co.*, 56 Wn.2d 162, 164, 351 P.2d 925 (1960) (reversible error to invite jury to speculate about contribution of preexisting condition when no evidence about it had been submitted); *Greenwood v. Olympic, Inc.*, 51 Wn.2d 18, 23, 315 P.2d 295 (1957) (same). Without competent evidence of causation, evidence of other injuries is thus inadmissible. Such evidence would only invite the trier of fact to speculate without an appropriate factual basis. *Wash. Irrigation & Dev. Co. v. Sherman*, 106 Wn.2d 685, 691-92, 724 P.2d 997 (1986) (reversible error to allow trier of fact to speculate about preexisting conditions when only inadmissible hearsay evidence supported any causal connection to current injury).

¶21 The moving parties must present substantial evidence that the condition " ' "probably" or "more likely than not" caused the subsequent condition, rather than that the accident or injury "might have," "could have," or "possibly did" cause the subsequent condition.' " *Ugolini v. States Marine Lines,* 71 Wn.2d 404, 407, 429 P.2d 213 (1967) (quoting *Orcutt v. Spokane County,* 58 Wn.2d 846, 853, 364 P.2d 1102 (1961) and citing *Bland v. King County*, 55 Wn.2d 902, 342 P.2d 599, 351 P.2d 153 (1959)). They have not met this burden. It is a rare person who does not from time to time experience headaches or other pains, and mere speculation of a connection does not amount to substantial evidence of a defense.

¶22 Nor do the defendants meet their burden under the second primary element of *White*: that the moving party's failure to timely appear in the action was occasioned by mistake, inadvertence, surprise, or excusable neglect. King

did respond and appear. But King made the deliberate choice, after being told of the consequence by the trial judge, not to prevent default judgment by filing an answer. The decision not to participate does not meet the standard required. Similarly, St. Paul knew about the accident, knew that it was Little's underinsured motorist carrier, and knew that King was uninsured. Again, as surveyed above, St. Paul had ample opportunity to intervene in the case and elected not to. Similarly, its decision not to participate fails to satisfy *White*.

¶23 Where a party fails to provide evidence of a prima facie defense and fails to show that its failure to appear was occasioned by mistake, inadvertence, surprise, or excusable neglect, there is no equitable basis for vacating judgment. It is thus an abuse of discretion.

¶24 Lastly, St. Paul and King argue that the trial court did not abuse its discretion in vacating the default judgment because, under CR 60(b)(11), the trial court may relieve a party from a default judgment on "[a]ny other reason justifying relief from the operation of the judgment." St. Paul and King argue that "extraordinary circumstances" exist here: the trial court's failure to enter findings of fact and conclusions of law when granting the default judgment. St. Paul and King are correct that CR 55(b)(2) requires findings of fact and conclusions of law to be filed.

¶25 But CR 55(b)(2) does not define what constitutes adequate findings of fact and conclusions of law or the consequences of failure to file them. We require findings and conclusions in part to allow appellate scrutiny of the trial court's decision in uncontested cases. CR 55(b)(2). This protects the integrity of the justice system because it allows the reviewing court (and others) to evaluate the factual and legal basis for the trial court's decision. "Judges and commissioners must not be mere passive bystanders, blindly accepting a default judgment presented to it. Our rules contemplate an active role for the trial court when the amount of a default judgment is uncertain." *Lenzi*, 140 Wn.2d at 281. Here, King and St. Paul argue

that they have been denied this safeguard. However, this case is a straightforward, admitted liability negligence action and the impact of the failure to enter formal findings is minor. The Court of Appeals correctly determined, "[w]hile the judgment does not contain express findings and conclusions, Judge Middaugh listed all the material she considered, and entered default judgment in Little's favor in specific amounts ('$249,234.48 for past economic damages, $1,256,601.10 for future economic damages, and $650,000.00 as general damages')." *Little v. King*, noted at 127 Wn. App. 1021, 2005 Wash. App. LEXIS 977, at *18. The Court of Appeals found that "[t]his necessarily implies a finding of fact that Little suffered damages in the given amounts and the conclusion of law that Little was entitled to recover those sums from King." *Id.* We agree and conclude that, in this case, these implied findings are sufficient to allow appellate review.

¶26 We note that if more formal findings of fact and conclusions of law were necessary for appellate review, remand for their entry would be appropriate, not vacation of the default judgment. *See, e.g., Foxtrap, Inc. v. Foxtrap, Inc.*, 217 U.S. App. D.C. 130, 671 F.2d 636 (1982) (vacating the monetary award and remanding to the trial court to make findings of fact and conclusions of law because there were multiple theories of monetary remedies available and one finding did not satisfy the requirement to make clear the findings of fact and conclusions of law upon which its actions are grounded; findings were required under federal court rules); *Frame v. S-H, Inc.*, 967 F.2d 194, 204 n.9 (5th Cir. 1992) (even assuming findings were required, reversal is not necessary when a full understanding of the issues on appeal can nevertheless be determined by the appellate court); *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852 (8th Cir. 1996) (noting that a court may remand when lack of findings by district court would substantially hinder review, but concluding that findings were not necessary in

that case; findings were not required under federal court rules).[3]

## CONCLUSION

¶27 We affirm the Court of Appeals and remand for reinstatement of judgment.

C. JOHNSON, SANDERS, OWENS, and FAIRHURST, JJ., concur.

¶28 MADSEN, J. (concurring/dissenting) — I agree with the majority's holding that The St. Paul Insurance Company was not entitled to notice of the default hearing because it was not a party to the litigation. But I disagree with the majority's holding that the trial court abused its discretion in vacating the default judgment against Annie King. The majority's decision is contrary to our long-standing deference to a trial court's decision to set aside a default judgment in favor of a trial on the merits. It is well settled that an abuse of discretion is less likely to be found if the trial court sets aside a default judgment than if it denies a trial on the merits.

¶29 In reinstating a $2.1 million default judgment against a pro se defendant, the majority conducts a de novo review, views the facts in the light most favorable to the plaintiffs, and then applies a standard used at the close of evidence in a jury trial to conclude that the defendants were not entitled to have the default judgment set aside. Compounding its errors, the majority treats this case as a challenge to entry of a default judgment instead of what it actually is: a challenge to vacating a default judgment. I dissent.

---

[3] The parties also dispute the appropriate record for review. Given our disposition, we do not reach these arguments. Nor do we reach the issue of whether the existence of "unpublished" appellate opinions violates article I, section 10 of our state constitution. Little's motion for attorney fees is denied.

## DISCUSSION

¶30 It has long been the rule in Washington that the decision whether to vacate a default judgment is within the trial court's sound discretion. *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 584, 599 P.2d 1289 (1979); *Haller v. Wallis*, 89 Wn.2d 539, 543, 573 P.2d 1302 (1978); *Martin v. Pickering*, 85 Wn.2d 241, 245, 533 P.2d 380 (1975); *White v. Holm*, 73 Wn.2d 348, 351, 438 P.2d 581 (1968); *Borg-Warner Acceptance Corp. v. McKinsey*, 71 Wn.2d 650, 652, 430 P.2d 584 (1967); *Paine-Gallucci, Inc. v. Anderson*, 35 Wn.2d 312, 318-19, 212 P.2d 805 (1949); *Graham v. Yakima Stock Brokers, Inc.*, 192 Wash. 121, 126, 72 P.2d 1041 (1937); *Hull v. Vining*, 17 Wash. 352, 358-59, 49 P. 537 (1897); *see also* Philip A. Trautman, *Vacation and Correction of Judgments in Washington*, 35 WASH. L. REV. 505, 509 (1960) (the general principle that "considerable deference is given to the trial court's discretion" is "particularly true" in regard to default judgments). Such a decision should not be reversed on appeal unless it plainly appears that this discretion has been abused. *Griggs*, 92 Wn.2d at 584; *Haller*, 89 Wn.2d at 543; *Martin*, 85 Wn.2d at 241.

¶31 CR 60(b) is similar to Fed. R. Civ. P. 60(b), and federal courts have also consistently held that a decision to grant a motion for relief from judgment is reviewable only for a manifest abuse of discretion. *See* 10 JAMES WILLIAM MOORE, MOORE'S FEDERAL PRACTICE § 55.50[1][d] at 55-65 to -66 (3d ed. 2006) (collecting cases); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2693, at 92-93 (3d ed. 1982) (collecting cases).

¶32 In a proceeding to vacate or set aside a default judgment, the trial court "should exercise its authority 'liberally, as well as equitably, to the end that substantial rights be preserved and justice between the parties be fairly and judiciously done.'" *Griggs*, 92 Wn.2d at 582 (quoting *White*, 73 Wn.2d at 351). Any doubts should be resolved in favor of allowing a trial on the merits. 10 MOORE, *supra*, § 55.50[1][d], at 55-65 to -66.

¶33 It is also well established that an abuse of discretion is less likely to be found if the trial court sets aside a default judgment than if it denies a trial on the merits. *Griggs*, 92 Wn.2d at 582; *White*, 73 Wn.2d at 351-52; *Haller*, 89 Wn.2d at 543-44 ("a ruling which sets aside a default will be reviewed more leniently than one which denies a trial on the merits"); *Graham*, 192 Wash. at 126 ("a stronger case showing abuse of discretion is required for reversal than where trial on the merits has been denied" (citing *Agric. & Livestock Credit Corp. v. McKenzie*, 157 Wash. 597, 289 P. 527 (1930))). Indeed, a treatise commentator has observed that it is *"difficult to find"* cases reversing a trial court's decision to set aside a default judgment because *"appellate courts have demonstrated a marked deference to decisions granting relief against default entries and judgments."* 10A WRIGHT, MILLER & KANE, *supra*, § 2693, at 96 (emphasis added).

¶34 An abuse of discretion exists only when no reasonable person would take the position adopted by the trial court. *Cox v. Spangler*, 141 Wn.2d 431, 439, 5 P.3d 1265 (2000). In view of the equitable principles governing default judgments, it can hardly be said that the trial court here abused its discretion in vacating the default judgment in this case. To reach a contrary result, the majority ignores the facts favoring the defendants and views the record in the light most favorable to the plaintiff, contrary to well-established law.

## Meritorious Defense

¶35 In *White*, we stated that the existence of a prima facie defense is one of two "primary" factors that guide a trial court's exercise of discretion in ruling on a motion to set aside a default judgment. *White*, 73 Wn.2d at 352. However, we also stated that the factors "vary in dispositive significance" in view of the particular facts of the case. *Id.* Importantly, there are no "hard and fast" rules governing when a default judgment should be set aside. *Griggs*, 92 Wn.2d at 582. Rather, a court should always keep in mind

that the primary concern is whether the result will be just and equitable, in view of all the relevant facts and circumstances before it.

¶36 The majority incorrectly holds that the defendants failed to provide substantial evidence of a prima facie defense as a matter of law, erroneously applying the standard used to determine whether a party is entitled to a jury instruction at *the close of evidence at trial*. In doing so, the majority fails to take into account the procedural posture of this case and ignores relevant facts supporting King's defense.

¶37 The primary purpose of requiring a meritorious defense is to avoid a useless trial, which would occur if the defendant were unable to produce facts sufficient to produce a different result. *Griggs*, 92 Wn.2d at 583; *see, e.g.*, 10A WRIGHT, MILLER & KANE, *supra*, § 2697, at 163 (the underlying concern is to determine whether there is some possibility that the outcome of the suit, after a full trial, will be contrary to the result achieved by default). A general denial or a bare statement of a meritorious defense is not enough. *Penfound v. Gagnon*, 172 Wash. 311, 312, 20 P.2d 17 (1933). However, in determining whether a defendant has presented a meritorious defense, a reviewing court must view the evidence and the reasonable inferences from it in the light most favorable to the moving party. *Pfaff v. State Farm Mut. Auto. Ins. Co.*, 103 Wn. App. 829, 834, 14 P.3d 837 (2000).

¶38 Even a "tenuous" defense may sufficiently support a motion to vacate. *White*, 73 Wn.2d at 353; *see also Coon v. Grenier*, 867 F.2d 73, 77 (1st Cir. 1989) ("a party's averments need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense"). The facts in *White* help to illustrate this point.

¶39 In *White*, the plaintiff was walking along the sidewalk when the defendant, Holm, backed out of the recessed entryway of his business and collided with the plaintiff. White subsequently obtained a $16,497 default judgment against Holm for negligence.

¶40 In moving to vacate the default judgment, Holm stated that he could not see White as he backed away from his door, that she could see him, and that the physical contact between them was minimal. This court recognized that Holm's defense rested on the "slender premise" that the conduct of the parties and the physical characteristics of the scene, *when fully explored at a trial on the merits*, give rise to a factual issue" as to Holm's responsibility for White's injuries. *White*, 73 Wn.2d at 353 (emphasis added). In this respect, the affidavit presented a "sufficient, although minimal, prima facie defense for purposes of the[ ] motion to vacate the judgment." *Id.*

¶41 Here, contrary to our decision in *White*, the majority scrutinizes the evidence as though there had been a trial on the merits, not a default judgment. The majority states that "[t]he only thing offered was a declaration from an insurance adjuster stating that the adjuster had reviewed Little's medical records and found reports of headaches, hip pain, and depression before the collisions." Majority at 704. Finding this insufficient to entitle the defendants *to a jury instruction on preexisting conditions following the close of evidence at trial*, the majority concludes that King failed to establish a meritorious defense for purposes of setting aside the default judgment. Given that the purpose of the meritorious defense requirement is to assure that a trial on the merits will not be "useless," our concern should be whether there is a fair possibility that, with discovery and the adversarial testing of evidence, the outcome would differ.

¶42 Little's past medical records suggest that she may have preexisting medical conditions that would limit her damage award in this case. In faulting the defendants for not proving a causal connection between her preexisting injuries and postaccident condition, the majority ignores the fact that St. Paul had *unsuccessfully* sought access to Little's full medical history for over a year prior to the default hearing. The partial records that were obtained indicate that Little had been treated multiple times for "persistent pain with respect to her right hip and lower

back" before the accident. Clerk's Papers (CP) at 334. Her medical records also indicate that she suffered recurrent bouts of depression.[4] The medical records were presented to the trial court as an exhibit accompanying the motion to set aside the default judgment.

¶43 Little's medical records were not the only evidence the defendants presented in support of their contention that her injuries did not result from King's negligence. King stated that both collisions were at very low speeds and resulted in no visible property damage. Little told King that she was uninjured and did not want medical attention at the scene of the accident. Neither King's nor Little's passengers were injured. Following the second impact, in which, according to King, she had merely "tapped" Little's car as they reentered the highway, Little continued driving away. CP at 384.

¶44 Although the Court of Appeals reversed the trial court on other grounds, it correctly recognized that the evidence of Little's preexisting condition, together with the evidence of the nature of the collisions, present a colorable prima facie defense to Little's claim. *Little v. King*, noted at 127 Wn. App. 1021, 2005 Wash. App. LEXIS 977, at *13; *see also Showalter v. Wild Oats*, 124 Wn. App. 506, 101 P.3d 867 (2004) (plaintiff's past treatment for asthma, hypertension, depression/anxiety disorder, spinal injuries, and chiropractic treatment for back injuries supported reasonable inferences that plaintiff's injuries were attributable to preexisting conditions, not the defendant's negligence).

¶45 The majority would require the defendants to come forth with expert testimony that relates, on a more probable than not basis, Little's preexisting condition with her postaccident injuries. In doing so, the majority ignores the procedural posture of this case: there has been no medical examination of the plaintiff by a defense expert and no cross-examination of the plaintiff's witnesses.

---

[4] *See* CP at 335 (medical record noting that Little was "lapsing back" into depression and was being prescribed an antidepressant).

¶46 In *Calhoun v. Merritt*, 46 Wn. App. 616, 731 P.2d 1094 (1986), the Court of Appeals acknowledged the difficulty of developing a defense to a general damages award in the absence of discovery. In that case, the plaintiff obtained a default judgment arising from a rear-end collision, including a $50,000 award for pain and suffering. *Id.* at 618. Relying on an insurance adjuster's affidavit, the defendant contended the damages were excessive in comparison with similar claims. The Court of Appeals recognized that in the absence of a medical examination by a defense expert, the defendant could do little more to substantiate his defense. *Id.* at 620. Given these considerations, the Court of Appeals concluded that it would be "inequitable and unjust" to deny the motion for failure to present a prima facie defense, without regard to other relevant factors.

¶47 The approach followed by *Calhoun* accords with the principle that even a tenuous defense may provide a sufficient basis to vacate a default judgment. The practical difficulty of defending a claim in the absence of discovery may be a relevant consideration in evaluating whether a defendant has presented a meritorious defense sufficient to support a motion to vacate a default judgment.

¶48 Despite the similarity of this case with *Calhoun*, the majority instead adopts the approach of another Court of Appeals opinion, *Farmers Insurance Co. of Washington v. Waxman Industries, Inc.*, 132 Wn. App. 142, 130 P.3d 874 (2006). In *Waxman*, the Court of Appeals concluded that the *Calhoun* rationale does not apply when discovery of a potential defense is within the defendant's control. In that case, the defendant claimed that further discovery would permit it to develop a defense establishing that its own subcontractor was responsible for the defective product that allegedly caused the plaintiff's injuries. The court properly rejected the argument, reasoning that, unlike the situation in *Calhoun*, the absence of discovery did not impede the defendant from developing a defense because the defective product had been within the defendant's possession throughout the litigation. *See also Johnson v. Cash Store*,

116 Wn. App. 833, 847, 68 P.3d 1099 (defendant's need to investigate its own employees to determine relevant facts did not support vacation of default judgment because the defendant "held the keys to its own defense"), *review denied*, 150 Wn.2d 1020, 81 P.3d 120 (2003).

¶49 Contrary to the majority's reasoning, even a cursory review of the facts here makes it clear that *Calhoun*, not *Waxman*, applies in this case. The defendants challenged Little's claim to the extent reasonably possible, given the absence of an independent medical examination or the opportunity to cross-examine the plaintiff's witnesses. The defendants presented the trial court with Little's medical records showing the existence of preexisting conditions. They pointed out that the declarations in support of the damages award do not indicate that Little's treating physicians were aware of her preexisting conditions or took them into account in relating Little's injuries to the accidents. They presented evidence that the collisions were minor, that Little had no apparent injuries at the time, and that she did not require medical assistance. Further, the fact that the trial court entered a $2.1 million default judgment is not irrelevant in assessing whether King established a sufficient defense to justify vacating the default judgment.

¶50 This court has acknowledged that the amount of damages awarded is a relevant factor that may be considered by a trial court in deciding whether to set aside a default judgment. *See White*, 73 Wn.2d at 353 ("where, as here, . . . the damages sought are substantial and unliquidated" even a "tenuous" defense may support vacation of the default judgment when other factors are met); *Graham*, 192 Wash. at 126-27 ("it is to be borne in mind that, by the entry of default, [the defaulting parties] were not only denied a trial on the allegations of the[ ] complaint, but were also subjected to an affirmative judgment . . . in a large sum without an opportunity to contest the claim").

¶51 It is well established in federal courts that default judgments are especially disfavored when substantial

amounts of money are involved. *See* 10A WRIGHT, MILLER & KANE, *supra*, § 2681, at 10-11; 10 MOORE, *supra*, § 55.20[2][b] at 55-28 to -29; 47 AM. JUR. 2D *Judgments* § 663 (2006) (noting that amount of money involved is a relevant factor in determining whether to set aside a default judgment); *Hutton v. Fisher*, 359 F.2d 913, 916 (3d Cir. 1966) (" 'Matters involving large sums should not be determined by default judgments if it can reasonably be avoided. . . . Any doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits.' " (alteration in original) (quoting *Tozer v. Charles A. Krause Milling Co.* 189 F.2d 242, 245 (3d Cir. 1951))); *Hertz v. Berzanske*, 704 P.2d 767, 773 (Alaska 1985) (setting aside default judgment of approximately $436,000, noting "a controversy concerning damages of this magnitude should be resolved on its merits whenever possible").

¶52 Here, Little claimed over $2 million in damages for an accident that arguably involved two minor impacts, resulting in no visible property damage, in which both drivers drove away without need of medical treatment. In assessing the adequacy of King's defense, the trial court was entitled to take into account the apparent discrepancy between the size of the award and the nature of the collision, viewing the evidence in the light most favorable to King.

¶53 On the record before the trial court, the defendants adequately established that a trial on the merits would not be "useless." Viewed in the light most favorable to the moving party, the defendants asserted a meritorious defense to Little's claim that she was severely injured in the automobile collisions due to King's negligence. Contrary to the majority's position, the trial court was not required to rule, as a matter of law, that the defendants failed to present a sufficient prima facie defense in support of the motion to set aside the default judgment.

## Excusable Neglect

¶54 The majority is also wrong in holding as a matter of law that the defendants failed to establish "mistake, inadvertence, surprise, or excusable neglect." Majority at 704. Again, the majority fails to defer to the trial court and, instead, views the record selectively and in the light most favorable to the plaintiff.

¶55 The concept of excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993).

¶56 The fundamental guiding principle is

"whether or not justice is being done. *Justice will not be done if hurried defaults are allowed any more than if continuing delays are permitted.* But justice might, at times, require a default or a delay. What is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome."

*Griggs,* 92 Wn.2d at 582 (emphasis added) (quoting *Widicus v. Sw. Elec. Coop., Inc.,* 26 Ill. App. 2d 102, 109, 167 N.E.2d 799 (1960)).

¶57 As to King, the majority states, "King made the deliberate choice, after being told of the consequence by the trial judge, not to prevent default judgment by filing an answer. The decision not to participate does not meet the standard required." Majority at 706. In characterizing King's conduct as a "deliberate choice," the majority fails even to acknowledge the affidavits in support of her motion to set aside the default judgment. *Id.*

¶58 There is no transcript of the default hearing. The court record contains the bare statement, "Defendant indicates she will not be responding to the complaint and the court grants plaintiff's motion for default." CP at 252.

¶59 In moving to set aside the default judgment, King told the trial court that she was currently in drug treatment and that at the time of the litigation, she had been addicted

to methamphetamine and was "essentially a homeless person." She did not receive the plaintiff's requests for admission and ER 904 submittals. She stated that she was "not familiar with the legal process and showed up at the Default Hearing and tried to object but did not know what to do." CP at 384. In a handwritten statement, King explained:

> I was <u>very</u> frustrated because I did not know how to tell my side of the story and because I did not think anyone wanted to hear my side of the story . . . [.] I wanted to explain how the accidents happened[,] why I don't think anyone was hurt[,] why I don't think Mrs. Little is entitled to huge sums of money from me[,] and what this means to my life right now [and] my small job.

CP at 385.

¶60 In a supporting declaration, King's attorney stated, based on his extensive experience interviewing witnesses, he believed the 21-year-old King had no real understanding of any of the proceedings against her and lacked the ability to understand their consequences or how they should be defended. He described King as "a person of limited intellectual capacity in difficult circumstances which she is trying to overcome." CP at 389. He stated that she did not have the intellectual ability to make a reasoned distinction between liability and damages and that she had not intended to consent to a damages award. Further, she had not chosen to be pro se but was unable to obtain legal representation.

¶61 If King had, indeed, made a "deliberate choice" not to defend the lawsuit, her conduct would have been inexcusable. We will not excuse a party's willful obstruction of the orderly administration of justice. *Bishop v. Illman*, 14 Wn.2d 13, 126 P.2d 582 (1942) (bank deliberately, willfully refused to comply with writ of garnishment). On the other hand, omissions resulting from a party's misunderstanding or miscommunication of its legal obligations deserve more lenient treatment. *Griggs*, 92 Wn.2d 576.

¶62 Doubts must be resolved in favor of a trial on the merits. In this case, there are serious doubts about whether

King was capable, at the time, of making a "deliberate choice" not to defend the lawsuit.

¶63 The pleadings and declarations in support of the motion to vacate the default judgment presented the trial court with several factors relevant to its determination that King's failure to defend was excusable, for purposes of CR 60(b)(1), including her youth, lack of sophistication, homelessness, drug addiction, pro se status, questionable mental state, and the absence of bad faith. *See TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 698 (9th Cir. 2001) (lack of familiarity with the legal system, while not sufficient in itself to demonstrate excusable neglect, is a relevant consideration); *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997) (omissions of a pro se defendant may constitute excusable neglect); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96-97 (2d Cir. 1993) (error not to consider defendant's pro se status in considering whether the set aside default); *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248 (2d Cir. 1997) (lack of familiarity with the court rules may constitute excusable neglect within the meaning of Fed. R. Civ. P. 60(b)); *Knoebber*, 244 F.3d at 698 (defendant's depression following spouse's death supports finding of excusable neglect); *Stirm v. Puckett*, 107 Idaho 1046, 695 P.2d 431 (1985) (setting aside default judgment against defendant apparently impaired by mental illness); *Brothers v. Brothers*, 71 Mont. 378, 230 P. 60 (1924) (setting aside default judgment where defendant had continuing mental health problems).

¶64 King's counsel claimed that she was a "20-year-old recovering drug addict who 'was essentially a homeless person' " who did not choose to be pro se. Pet. for Review of Annie King at 16 (quoting CP at 384). Although King had no legal representation, she appeared at her deposition and the default hearing. There is no indication that she acted in bad faith in failing to answer the complaint. Plus, the size of the award, $2.1 million, is large by any measure, and would clearly impact King's future should St. Paul attempt to enforce the judgment against her. Moreover, King acted

quickly after learning of the default judgment, and there is no unfair prejudice to Little if the default judgment is vacated, other than delay in recovery and having to present evidence in a trial. As the Court of Appeals correctly noted in *Johnson*, 116 Wn. App. at 842, the "vacation of a default judgment . . . cannot be said to substantially prejudice the nonmoving party merely because the resulting trial delays resolution on the merits."

¶65 The trial court was entitled to take these factors into consideration in deciding whether to vacate the default judgment. A reasonable person could conclude that King, a teenager at the time of the accidents, who was unrepresented at the time of the default proceedings, did not understand and was unable to effectively participate in the hearing, and that her failure to defend was, therefore, excusable.[5]

¶66 As to St. Paul, the majority states, "St. Paul had ample opportunity to intervene in the case and elected not to." Majority at 706. Again, the majority ignores the relevant facts and circumstances before the trial court. St. Paul provided the trial court with copies of its extensive correspondence with Little's attorney. Little's attorney informed St. Paul that she did not intend to pursue King, regarding her as "judgment proof." In its motion to set aside the default judgment, St. Paul stated that it had not intervened because it believed Little intended to arbitrate the claim. The correspondence includes St. Paul's repeated requests for access to Little's complete medical history. Less than two months before Little moved for a default judgment (without notice to St. Paul), Little's attorney assured St. Paul that he would forward Little's medical release as soon as she signed it. St. Paul explained to the trial court that it had been awaiting the opportunity to review Little's medical records in order to evaluate her claim. St. Paul informed the court: "To date, St. Paul has never received the endorsed

---

[5] The record indicates that King's mother was in prison at the time of the accidents and that her father's whereabouts was unknown.

medical authorization it sent to Lisa Little, or any other medical release or authorization, nor has St. Paul been able to obtain a complete set of medical records regarding Ms. Little's preexisting medical conditions other than the selected and obviously incomplete records provided by Lisa Little's counsel." CP at 362.

¶67 Given that Little's attorney continued to exchange correspondence with St. Paul, apprising it of her condition, and six weeks prior to the default hearing stated that he would forward Little's medical authorization, St. Paul could have reasonably believed that Little intended to settle the claim with St. Paul. The fact that St. Paul received a copy of the summons and complaint is not inconsistent with its assertion. St. Paul did not need to establish that Little's attorney deliberately misled it or otherwise committed misconduct in order to demonstrate that its own inaction was not inexcusable. *See Hull*, 17 Wash. 352 (defendant's failure to defend may be excusable if it results from mistaken reliance on representations by plaintiff's counsel made without an intention to mislead). The trial court was entitled to conclude that St. Paul reasonably believed Little filed the suit before the statute of limitations expired in order to avoid prejudicing its subrogation rights and that Little intended to settle the claim with St. Paul.[6]

## Failure To Comply with CR 55(b)(2)

¶68 The defendants also argued that the default judgment should be set aside because it was unsupported by findings of fact and conclusions of law, contrary to CR 55(b)(2). Rather than deferring to the trial court's exercise of discretion, the majority reviews the record de novo and concludes that the failure to enter "formal findings" was a "minor" omission because the record contains sufficient

---

[6] Because the trial court's decision to vacate the default judgment is sustainable as to King, it is unnecessary to determine whether St. Paul independently established sufficient grounds to have the judgment set aside. Nevertheless, the facts presented by St. Paul provide additional support for the trial court's decision.

evidence to support the damages award. Majority at 707. The majority analyzes the issue as though we were reviewing the *entry* of the default judgment, not the decision to *vacate* it. The appropriate question is not whether the record is sufficient to allow appellate review, but whether, confronted with a procedurally defective default judgment, the trial court abused its discretion in setting it aside.

¶69 The absence of required findings here was a tenable ground for the trial court's decision to vacate the default judgment.

¶70 CR 55(b)(2) provides that

> [i]f, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings as are deemed necessary or, when required by statute, shall have such matters resolved by a jury. *Findings of fact and conclusions of law are required under this subsection.*

(Emphasis added.) The rules also provide that when findings and conclusions are required, "the court shall find the facts specially and state separately its conclusions of law." CR 52(a)(1). And, CR 52(d) provides that a judgment entered "where findings are required, without findings of fact having been made, is subject to a motion to vacate." Further, the rules direct that "[a]fter vacation, the judgment shall not be reentered until findings are entered pursuant to this rule." *Id.* Plainly, the trial court's decision to vacate was proper under the governing rules.

¶71 In addition, the trial court could have reasonably concluded that the lack of findings and conclusions was an "irregularity in obtaining a judgment" for purposes of CR 60(b)(1). " 'An irregularity is defined to be the want of adherence to some prescribed rule or mode of proceeding; and it consists either in omitting to do something that is necessary for the due and orderly conducting of a suit, or doing it in an unseasonable time or improper manner.' "

*Port of Port Angeles v. CMC Real Estate Corp.*, 114 Wn.2d 670, 674, 790 P.2d 145 (1990) (internal quotation marks omitted) (quoting *In re Ellern*, 23 Wn.2d 219, 222, 160 P.2d 639 (1945)); *see also Madera v. J.R. Simplot Co.*, 104 Wn. App. 93, 15 P.3d 649 (2001) (describing irregularities under CR 60(b)(1) as concerning departures from prescribed rules or regulations); *Kennewick Irrigation Dist. v. 51 Parcels of Real Property*, 70 Wn. App. 368, 853 P.2d 488 (failure to comply with CR 55(b)(3), requiring court to examine plaintiff under oath before entering judgment when defendant is served by publication or mail), *review denied*, 122 Wn.2d 1027 (1993); Trautman, *supra*, at 514 (noting that defects in the judgment itself may constitute an irregularity).

¶72  For example, in *Hays v. Peavey*, 54 Wash. 78, 81, 102 P. 889 (1909), the trial court granted a motion to vacate a judgment where the statute (BAL. CODE § 4878; PIERCE'S CODE § 336) directed that a summons by publication contain a brief statement of the object of the action, but such a statement was not contained. This court affirmed, holding that the trial court did not abuse its discretion in vacating the judgment based on the irregularity, which the court observed may have caused confusion.

¶73  We have observed that the entry of findings of fact and conclusions of law is an important "safeguard" for defendants, which assures that the trial court does not act as a "passive bystander" in entering a default judgment, but plays an "active role" in assessing the appropriate award of damages when the amount is uncertain. *Lenzi v. Redland Ins. Co.*, 140 Wn.2d 267, 281, 996 P.2d 603 (2000).

¶74  The majority states that the appropriate remedy for failure to comply with CR 55(b)(2) is remand for entry of findings, not vacation of the default judgment. The cases relied upon by the majority do not support this assertion. In the cases relied upon by the majority, findings of fact were not required and the issue on review was whether the trial court abused its discretion by *entering* the default judgment, not by setting it aside. In *Frame v. S-H, Inc.*, 967 F.2d 194 (5th Cir. 1992), the court held that the lack of findings

in support of a discovery sanction did not require vacation of a default judgment in view of the voluminous evidence in the record detailing the defendant's egregious and repeated discovery abuses, together with a transcript detailing the court's reasons for the sanction. And in *Ackra Direct Marketing Corp. v. Fingerhut Corp.*, 86 F.3d 852 (8th Cir. 1996), the court held that a trial court did not abuse its discretion in *entering* a default judgment, notwithstanding the lack of a written explanation of its reasons. The court expressly noted that it was *not* reviewing the trial court's decision on a motion to *vacate* the default judgment. *Fingerhut Corp.*, 86 F.3d at 856.

¶75 I agree that it may be appropriate to sustain a trial court's entry of a default judgment in the absence of required findings when the record contains sufficient evidence to support a damages award. However, it does not follow that a trial court abuses its discretion by setting aside a default judgment for failure to comply with CR 55(b)(2), particularly in light of CR 52(d).

¶76 In this case, the default judgment lacks *any* findings that indicate the trial court played an active role in assessing the damages award. The court awarded the exact amount requested by the plaintiff in her supporting memorandum, including a $650,000 award for general damages. CP at 56-57. In the absence of such findings, there was no assurance that the earlier court had independently assessed the evidence before entering the default judgment, a factor that the trial court could properly weigh in favor of allowing a trial on the merits.

¶77 Where there are no findings as required under CR 52(d), the record is "void," tantamount to "an invitation to read the evidence, consider it de novo, and second guess the trial court." *State v. Kingman*, 77 Wn.2d 551, 552, 463 P.2d 638 (1970) (declining the invitation). Given the lack of either a written opinion or transcript of the proceeding, the trial court was entitled to treat the absence of required findings as an "irregularity" that warranted vacation of the default judgment, particularly in view of the size of the

default judgment, and evidence suggesting both the low-impact nature of the collisions and the existence of the plaintiff's preexisting injuries. The trial court was not required to search the court record to determine whether substantial evidence supported the damages award. Rather, the trial court was required to weigh the equities and determine whether to set aside the default judgment. The absence of required findings weighed in favor of setting aside the judgment because it raised a substantial doubt as to whether the court independently evaluated the evidence in support of the damages award, as contemplated by CR 55(b)(2).

¶78 The majority states if the entry of findings of fact is necessary for appellate review, the appropriate remedy is to remand but not vacate the default judgment. While such a remedy may be appropriate if our review was of the trial court's entry of the default judgment, it has no relevance in the context of reviewing the decision to vacate the default judgment. In deciding whether to vacate the default judgment, the trial court was not reviewing the original trial court's decision to enter the default judgment, and its task was not to correct the trial court's errors or remand for clarification.

¶79 Moreover, the majority fails to recognize that even if we were reviewing the entry of the default judgment and were to remand to the trial court for the entry of findings, *the outcome could differ*. This is apparent in one of the cases cited by the majority. In *Foxtrap, Inc. v. Foxtrap, Inc.*, 217 U.S. App. D.C. 130, 671 F.2d 636, 639 n.1, 642 (1982), the district court *vacated* a default judgment after concluding that the district court's "one laconic finding that the appropriate monetary remedy was $75,000" failed to satisfy the requirement that a district court enter findings and conclusions in support of default damages.[7] The court instructed

---

[7] Although the federal counterpart to CR 55(b)(2) does not expressly require findings and conclusions, such findings are required by judicial construction of the rule. *Foxtrap*, 671 F.2d at 639 (noting that Fed. R. Civ. P. 52(a) does not require findings of fact to be made for default judgments, except as to damages).

the trial court on relevant factors it should consider in reevaluating its decision on remand.

¶80 A judgment is not final until the required findings and conclusions are entered. *Ferree v. Doric Co.*, 62 Wn.2d 561, 567, 383 P.2d 900 (1963). Findings and conclusions are always subject to revision until they are actually signed and entered. *DGHT Enters. v. Pac. Cities, Inc.*, 137 Wn.2d 933, 977 P.2d 1231 (1999). Moreover, a trial court has broad discretion in determining the appropriate damages award under CR 55(b)(2). The court has discretion to hold a hearing, bench trial, or even a jury trial. 4 KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE CR 55, at 339 (5th ed. 2006). In this case, the trial court elected to enter a damages award based on the affidavits alone. This, too, was within its discretion. *See Miller v. Patterson*, 45 Wn. App. 450, 457, 725 P.2d 1016 (1986) (noting permissive language in CR 55(b)(2) that "the court may conduct such hearings as are deemed necessary"). However, upon remand, the trial court would have discretion to change its findings, and could reopen the hearing for additional evidence. *Turpen v. Johnson*, 26 Wn.2d 716, 175 P.2d 495 (1946); *see* 4 TEGLAND, *supra*, CR 52, at 265; *see also Paine-Gallucci*, 35 Wn.2d at 321 (recognizing that a trial court has discretion to permit a defaulting party to participate in a damages hearing). Given that King is now represented by counsel and St. Paul has joined the litigation, it is possible, if not likely, that upon remand a court would allow the defendants to challenge the evidence in support of the damages award, resulting in a different outcome.

## CONCLUSION

¶81 Under the circumstances presented here, the trial court did not abuse its discretion by concluding that the equities favored setting aside the default judgment. To reach a contrary result, the majority ignores our long-

standing deference to the trial court and our strong preference for trial on the merits. I dissent.

ALEXANDER, C.J., and BRIDGE and J.M. JOHNSON, JJ., concur with MADSEN, J.

After modification, further reconsideration denied October 3, 2007.